Phyllis A. HIXSON, Plaintiff,

v.

Joel HIXSON, Defendant.

In the Matter of Joel HIXSON, Debtor.

Bankruptcy No. 3–81–02107.
Adv. No. 3–81–0669.

United States Bankruptcy Court,
S. D. Ohio W. D.

Oct. 8, 1982.

James F. Stevenson, Sidney, Ohio, for debtor-defendant.

Townsend Foster, Jr., Troy, Ohio, for plaintiff.

## DECISION

ELLIS W. KERR, Bankruptcy Judge.

This adversary proceeding is before the Court on the complaint of Phyllis Hixson (Plaintiff) to determine the dischargeability of certain debts of the debtor, Joel Hixson (Defendant). The parties have submitted the matter to the Court on the basis of stipulations and accompanying memorandum of law.

## FACTS

The relevant portions of the stipulations and the Separation Agreement attached thereto, may be summarized as follows:

1. On August 4, 1980, Plaintiff (Wife) and Defendant (Husband), who had been married for a period of thirty-three (33) years, entered into a Separation Agreement. On September 29, 1980 the parties were granted a Decree of Dissolution of Marriage in the Common Pleas Court of Miami County, Ohio and the Separation Agreement was incorporated as part of the Decree;

2. Article I of the Separation Agreement provided that the husband would deed the residential real estate to the wife and that the wife agreed to pay the balance on the first mortgage from the proceeds of the sale of the real estate;

The husband conveyed the real estate to the wife, but the wife has been unable to sell the property;

3. Article II of the Separation Agreement provided that the husband would continue to make payments of the first and second mortgages covering the real estate until the property was sold;

Article II also provided that if the wife sold the real estate, she would pay the balances on the mortgages;

The husband made payments on the first mortgage through April 1981, but failed to make the payments for May 1981 and there-

after. Payments on the first mortgage in the amount of $360.00 for May, June and July were made by the wife;

The husband failed to make payments on the second mortgage for April, May, June and July in a total amount of $221.40;

4. Article VII provided that the husband agreed to pay all household expenses, including electricity, telephone, fuel oil, real estate taxes, household insurance and to be responsible for the maintenance and repair of the home until the property was sold;

At the time of filing bankruptcy, the husband had failed to pay the following expenses:

| | |
|---|---|
| Real Estate Taxes | $317.69 |
| Telephone Bill | 36.00 |
| Fuel Oil | 69.70 |
| New leach bed | 1200.00 |
| Battery for garden tractor | 36.00 |

5. Articles II and III provided for the husband to receive certain items of personal property and for the wife to receive the remaining household goods and furniture;

6. Article V provided that the husband agreed to pay certain credit card debts;

7. Article VIII provided that the husband would pay to the wife the sum of twenty dollars ($20.00) per week for a period of one year starting on the day following the closing of sale of the real estate;

8. Article XI reads as follows: "In consideration of the performance of the provisions of this agreement, each party releases the other from all obligations past and present, except as herein mentioned, or for further care, support, or maintenance; and each party agrees to not contract upon the credit of the other any obligations; nor to institute any action or claim for alimony, expense money, or otherwise, one against the other";

9. Article XII of the Separation Agreement reads as follows: "This agreement shall be a full and complete settlement of all alimony and property rights between the parties, each of whom does by these provisions hereof, release, satisfy, and discharge all claims and demands against the other, including rights to dower, inheritance, descent, distribution, all rights as surviving spouse, heir, legatee, and next of kin in the estate of the other, and that all property which each now owns or may hereafter acquire, except as hereinafter provided."

It was also stipulated that during the marriage the wife had worked periodically in various positions in retail stores as a sales clerk and stock clerk. At the time of the parties' dissolution of marriage, Plaintiff held a position giving her a net take-home pay of $110.00 per week. The parties had no minor children.

The Court also notes that the Debtor's Statement of Financial Affairs reveals that he has been employed as a laboratory technician for the past ten (10) years and earned approximately $17,000 in 1980.

## CONCLUSIONS OF LAW

■ The issue before the Court is whether the obligations mentioned above are nondischargeable under 11 U.S.C. § 523(a)(5), which reads as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

Congressional intent as reflected in the legislative history of this section of the Bankruptcy Code makes at least two things clear. First, in determining what constitutes alimony, maintenance or support, a bankruptcy court is to be guided by Federal

law and not State law. [S.Rep.No. 989, 95th Cong., 2nd Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787] Second, where a debtor assumes an obligation of debtor's spouse to a third party in connection with a separation agreement, property settlement agreement, or divorce proceeding, the debt will be nondischargeable only to the extent that payment of the debt is actually in the nature of alimony, maintenance, or support. [124 Cong.Rec. H11,096 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S17,412 (daily ed. Oct. 6, 1978)] Simply put, U. S. Bankruptcy Courts are to use Federal law to determine the actual nature of payments that a debtor is required to make as a result of proceedings in State domestic relations courts.

■ Recent case law indicates that the fundamental inquiry in determining whether a provision of a settlement agreement is in the nature of alimony, maintenance, or support, is into the "intent" of the parties. [*See, e.g., In re LaFleur,* 11 B.R. 26 (Bkrtcy. Mass.1981); *In re Ingram,* 5 B.R. 232 (Bkrtcy.Ga.1980); *In re Massimini,* 8 B.R. 428 (Bkrtcy.W.D.Pa.1981)] Although the labels attached to various payment provisions of an agreement may be useful in determining the parties' intent, they are not controlling. Rather, the Bankruptcy Court must still consider the substantive nature of the debtor's obligations. [*See, e.g., In re Breaux,* 8 B.R. 218, 3 C.B.C.2d 604 (Bkrtcy. W.D.La.1981); *In re Spong,* 661 F.2d 6, 8 B.C.D. 150, 5 C.B.C.2d 242 (2nd Cir. 1981)]

In order to determine the substantive nature of a debtor's obligations, it is necessary to examine the facts and circumstances surrounding the obligations. *In re Sturgell,* 7 B.R. 59, 61 (Bkrtcy.S.D.Oh.1980). Each case must be decided upon its own merits after a consideration of the respective facts and surrounding circumstances. *In re Brace,* 13 B.R. 551, 554 (Bkrtcy.N.D.Ohio 1981).

■ A review of the many cases in this area of the law, persuades the Court that the following facts and circumstances are useful in varying degrees in making a determination as to the substantive nature of a debtor's obligation:

—the express terms of the separation agreement

—the relative incomes of the parties

—the length of the marriage

—the number and age of children

—the amount of child support

—whether the obligation terminates on death or remarriage of the recipient or donor spouse

—whether the obligation is payable in installments over a substantial period of time

—the level of education of the parties

—the physical health of the parties

—the probable need for future support

—the property brought to the marriage by either party

—whether the payments are intended as economic security

The Court is not unmindful that most of these factors are also considered by the State courts. Although a Bankruptcy Court applies Federal law in determining the character of an obligation, it is an unrealistic expectation that bankruptcy courts will formulate *sua sponte* and in a vacuum a law of alimony and support. [*See, In re Spong, supra; In re Richards,* 14 B.R. 276, 8 B.C.D. 111 (D.C.N.D.Ill.1981)] Some reference to state law is both necessary and appropriate.

Although there is no method of precisely quantifying the above factors, taken together, they provide indicia of the parties' intent at the time of the marriage's dissolution.

■ In the instant case, once the real estate is sold, the husband has agreed to pay twenty dollars ($20.00) per week for a period of one year. Further, these payments are to be made through the Miami County Bureau of Support. Obviously these payments will be for the support and maintenance of the wife. Until the home is sold, the husband has agreed to make the mortgage payments as well as to pay certain household expenses and to be responsible for the maintenance and repair of the home. Reading these provisions of the Sep-

aration Agreement in conjunction, it is a reasonable inference that the husband's duties prior to the sale of the house are in lieu of maintenance and support. Upon the sale of the real estate, the husband's payments of twenty dollars ($20.00) per week will be substituted for the other duties of the husband. Even without the provision for twenty dollars ($20.00) per week, we believe the wife's waiver of future alimony, support and maintenance was at least partially induced by the husband's promise to make the home mortgage payments and to be responsible for maintenance and repair of the house. We find, then, that the assumption of these responsibilities evidenced an intent by the parties to provide the wife with economic security, which is in the nature of maintenance and support. [*See, In re Tope,* 7 B.R. 422 (Bkrtcy.S.D.Oh.1980); *In re Sturgell, supra*]

Based on the foregoing, Defendant's obligation to Plaintiff to pay the first and second mortgages on the real estate are found to be nondischargeable. In addition, the obligations for the real estate taxes, the telephone bill and fuel oil are also nondischargeable because they are household expenses which the debtor expressly agreed to pay and are in the nature of maintenance and support.

■ The debts for the new leach bed and the garden tractor battery are dischargeable. Although they are household expenses, no evidence has been submitted or stipulated to regarding the necessity or reasonableness of such expenses. Even where an ex-spouse's promise to pay household expenses is construed generally as an obligation in the nature of support and maintenance, the Court will impose a requirement of necessary and reasonable. The debts, which we have found to be nondischargeable, appear by their nature to be *prima facie* necessary and reasonable. Such is not the case regarding the debts for the new leach bed and garden tractor battery, and thus the necessity of evidence.

In the case at bar, our findings result in a significant portion of the debts scheduled by the debtor being declared nondischarge-able. In making a determination of whether a particular obligation is in the nature of alimony, support or maintenance, it should be noted that although granting a debtor a fresh start is a fundamental goal of bankruptcy relief, "It is also certain that the public policy consideration behind the Bankruptcy Code in giving the debtor a fresh start does not mean that this should be done at the expense of his familial duties." *In re Breaux, supra.*

"The provision of the Code excepting from the overall protective provision of the general discharge obligation for alimony, maintenance or support of a wife or children continues the historical approach which always afforded to spouses or children some form of protection against future adversities which they face when the family unit is destroyed. The public policy behind this approach is clear and is based on the proposition that the former spouse rather than society should be responsible for the maintenance and support of members of the family unit which is destroyed through divorce." *In re Newman,* 15 B.R. 67, 69 (Bkrtcy.M. D.Fla.1981).

The major contention of the debtor in his memorandum is that the payments on the first and second mortgages are dischargeable because the payments are not to be paid to the wife, but rather to creditors. This argument exalts the form of the obligation over its substance, and is therefore not persuasive. In addition the legislative history of 11 U.S.C. § 523(a)(5) does not support the debtor's position.

"If the debtor has assumed an obligation of the debtor's spouse *to a third party* in connection with a separation agreement, property settlement agreement, or divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support of debtor's spouse, former spouse, or child." (emphasis supplied) [124 Cong.Rec. H11,096 (daily ed. Sept. 28, 1978)]; [124 Cong.Rec. S17,412 (daily ed. Oct. 6, 1978)]

It is therefore, ORDERED, ADJUDGED AND DECREED, that payments due on the first and second mortgages on the real estate, the real estate taxes, the telephone bill and fuel oil are not dischargeable in bankruptcy, and further,

ORDERED, ADJUDGED AND DECREED, that the debts for the leach bed and garden tractor battery are hereby discharged.