**In re Montgomery Hulon HARRELL, Debtor.**

**Caryl Ann (Kaldenberg) Harrell SHARP, Defendant-Appellant and Cross-Appellee,**

v.

**Montgomery Hulon HARRELL, Plaintiff-Appellee and Cross-Appellant.**

**Bankruptcy No. 80–03730A.
Civ. A. No. C82–2953A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 5, 1983.

Timothy J. Sweeney, Perry A. Phillips, McCauley, Owen & Sweeney, Atlanta, Ga., for plaintiff-appellee and cross-appellant.

Paul W. Bonapfel, Cotton, White & Palmer, Atlanta, Ga., for defendant-appellant and cross-appellee.

## ORDER

FORRESTER, District Judge.

This bankruptcy action is before this court on appeal. On October 12, 1982, Mrs. Sharp (defendant) filed her notice of appeal. Thereafter, on October 21, 1982, Mr. Harrell (debtor) filed his notice of cross appeal. Bankruptcy Rule 810 provides the proper standard for review: "The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses." Questions of law, however, are reviewable by the district court, *In Re Elin*, 20 B.R. 1012 (D.N.J.1982), and are subject to an "erroneous" standard. *See In Re*

*Visiting Home Services, Inc.,* 643 F.2d 1356, 1359 (9th Cir.1981); *In Re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 331 (E.D.Pa. 1982).

## I.

On September 10, 1971, the separation agreement was entered into between debtor and defendant. The debtor was to pay defendant $100 per month for her support and maintenance as long as she shall live or until she shall remarry. In addition, the debtor was to pay monthly child support for his son in the amount of $100 per month until his son became wholly self-supporting, or married, or attained the age of 21; further, debtor was to provide all the costs of the education of his son through college and post-graduate school. "The separation agreement by its terms set the parameters for the payment to be made by the debtor to his wife and son which were in the nature of alimony, support and maintenance." Order (filed August 18, 1981).

At the time of Mr. Harrell's and Mrs. Sharp's separate and subsequent divorce, Mrs. Harrell had completed one year of college education and was unemployed. Furthermore, Mrs. Sharp was obligated to make a $250 per month mortgage payment and to maintain a household out of the alimony she received and her $550 a month gross salary. There is no question but that at the inception of the debtor's obligation to pay alimony to Mrs. Sharp, there was a present need for Mrs. Sharp to receive said alimony payments.

Order, at 2–3 (filed October 1, 1982). On June 4, 1974, the separation agreement was amended, and provided that defendant was to receive $200 per month as alimony, and child support was to be increased to $200 per month. In addition, a trust was to be set up to provide for the debtor's obligation regarding his son's education.

In June of 1975, defendant remarried, thus terminating debtor's responsibility to provide defendant with alimony. It appears that before this point, debtor accrued alimony arrearages in the amount of $6,717 under the separation agreement and amendment.

On October 17, 1980, debtor filed a Chapter 7 petition. On December 12, 1980, debtor filed his complaint to determine the dischargeability of a debt.

On August 18, 1981, pursuant to a motion for summary judgment, the bankruptcy court held that a genuine issue of material fact existed as to whether the debtor's spouse or child is in present need of the arrearages. The court noted that notwithstanding 11 U.S.C. § 523(a)(5) specifically exempting from discharge the amounts of alimony, support, and maintenance, it would follow the holding and rationale of a case which indicates that a court should balance the Bankruptcy Code's policy to provide a debtor with a fresh start against the debtor's obligation to fulfill his familial obligations. Furthermore, in this order, the bankruptcy court held that the debtor's obligation to pay child support until his son reaches the age of 21, or becomes wholly self-supporting, or marries, and the debtor's obligation to pay his son's college expenses are not dischargeable. The court found that the agreement to provide educational expenses is in the nature of maintenance and support; the court noted that the legislative history dictates that state law is not determinative on this point, and that the statute's specification of "in the nature of" in 11 U.S.C. § 523(a)(5)(B) broadens the scope of maintenance and support for bankruptcy purposes.

On September 9, 1982, a trial was held on plaintiff's complaint in accordance with the statement of the law set forth in the August 18, 1981, order.

On October 1, 1982, the bankruptcy court issued its order, articulating the issues as follows:

Whether at the time Mr. Harrell and Mrs. Sharp entered into this September 10, 1971 separation agreement, as amended June 4, 1974, there was a present need that alimony and child support be paid and whether this need was in effect at the time of the filing of the debtor's Chapter 7 petition on October 17, 1980; (2) what amount of money was the debtor obligated to give his son for his support

and education; and (3) whether this Court could and to what extent it should modify the parties' separation agreement. Order at 2, 3. The court stated that it had jurisdiction over the question of the modification of the separation agreement pursuant to 28 U.S.C. § 1471(b), (c).

Specifically, the court concluded that the alimony arrearages are dischargeable:

The Court is presented with an interesting dilemma. It is difficult to conclude that in a situation in which a party has remarried a present need for alimony exists. In fact, it is arguable that what once was alimony has lost its character as alimony due to the change of circumstances, indicating support is no longer needed. This Court does not wish to create a precedent whereby debtors need only wait for their spouses to remarry to be relieved of any obligation they have to fund arrearages and alimony, as such a holding would militate against the clear Congressional policy of not allowing the discharge of alimony as evidenced by 11 U.S.C. §§ 523(a)(5) and 1328(a)(2). However, this policy must be balanced against the overriding Congressional policy contained in the Bankruptcy Code of providing a debtor with a "fresh start." In the instant case, Mrs. Sharp's de minimus present need for alimony, when balanced against the Congressional policy providing a debtor with a "fresh start," results in the conclusion that the alimony arrearages that Mr. Harrell owes to Mrs. Sharp are dischargeable under the peculiar facts and circumstances of the instant case.

Order, at 3–4.

Moreover, the court noted that the debtor's obligation to pay educational expenses is non-dischargeable. The court noted, however, that the obligation was limited by paragraph 3(c) of the original separate agreement, which provides:

It is the desire of the parties to provide the most excellent and suitable education within the husband's means.

From that conclusion, the court next found that "the question before the Court is the interpretation of this phrase and its translation into a dollar amount." Order at 4. As such, the court then held that the debtor's proposal to pay $300 per month toward his son's educational expenses is a reasonable figure and is made in good faith. The court noted that it is approximately fifteen percent of the debtor's net annual income.

Finally, the court found that the arrearages of child support which the debtor owed at the time of the filing of his voluntary Chapter 7 petition were non-dischargeable. Further, the court noted that: "At any time that there is a material change in the debtor's economic circumstances, the debtor's son may seek an increase in the $300 per month payments which he is to receive from the debtor commencing October 1, 1982." Order at 6.

## II.

Section 523(a)(5)(B) of Title 11 provides as follows:

A discharge under section 727, 1141, or 1328(b) of this Title does not discharge an individual debtor from any debt to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

*See generally* 3 Collier on Bankruptcy ¶ 523.15 (15th Ed.1983). The bankruptcy court in its order dated August 18, 1981, specifically found that "the separation agreement by its terms set the parameters for the payments to be made by the debtor to his wife and son which were in the nature of alimony, support and maintenance." Order at 2. Following the trial, the court found that "at the inception of the debtor's obligation to pay alimony to Mrs. Sharp, there was a present need for Mrs. Sharp to receive said alimony payments." Order of October 1, 1982, at 3.

The issue presented, thus, is whether a bankruptcy court may consider circumstances existing at the time of the bank-

ruptcy petition, or subsequent to the separation agreement, to determine whether payments required by the agreement are non-dischargeable under section 523. It is clear that the courts are split on whether such a prospective review of the relative financial positions of the parties is a proper inquiry in section 523(a)(5) cases. The court below utilized Judge Mabey's analysis in *Warner v. Warner,* 5 B.R. 434 (Bkrtcy.Utah 1980), which balances the need for continuing support payments against the need to secure a fresh start for the debtor. *Accord, Miller v. Miller,* 17 B.R. 717, 720 (Bkrtcy.W. D.Wis.1982). *But see In re Jenson,* 17 B.R. 537, 540 (Bkrtcy.W.D.Mo.1982).

■ Upon reflection, this court rejects Judge Mabey's balancing analysis in *Warner.* Judge Wiseman, in reversing a bankruptcy court decision in which such an analysis was employed, cogently stated the following:

> By creating an exception to the general rule of discharge, Congress implicitly resolved the balancing of the very interests considered by the court below in favor of the spouse. Congress did not, in any manner, manifest an intention that the bankruptcy courts should embark on the balancing of these policies. Under Section 523(a)(5), the bankruptcy courts are free to determine whether a debt characterized by a state court is alimony, support, or maintenance is in fact just that. Upon finding that a debt is in fact support, alimony, or maintenance, however, the bankruptcy court is not free to discharge the debt. Section 523(a)(5) states clearly that such debts are not to be discharged.

*Benz v. Nelson,* 20 B.R. 1008, 1011–12 (M.D. Tenn.1982). *Accord, Vickers v. Vickers,* 24 B.R. 112 (Bkrtcy.M.D.Tenn.1982).

■ The bankruptcy court's conclusion that "a genuine issue of material fact exists as to whether the debtor's spouse or child are in present need of the above-mentioned arrearages" is immaterial, therefore, to an inquiry under section 523(a)(5). There is no continuing obligation presented here; rather, the facts demonstrate that an arrearage that has accumulated prior to bankruptcy

and the debtor's obligation could not be classified as anything other than alimony, support, or maintenance. Therefore, the court below erred in denying defendant's motion for summary judgment. Accordingly, the bankruptcy court's discharge of prepetition alimony arrearages owing by debtor to defendant is hereby REVERSED.

### III.

The bankruptcy court, in evaluating the debtor's obligations regarding his son's educational expenses, essentially utilizes a three-tiered approach. First, the court concluded that the debtor's obligation to pay child support and obligation to pay his son's college expenses are not dischargeable. As to this point, the court found that the separation agreement to provide educational expenses was tantamount to maintenance and support within the meaning of section 523(a)(5). Second, the court concluded that as these obligations are not dischargeable, it had the power to inquire into the interpretation of paragraph 3(c) of the separation agreement by translating it to a dollar amount. Apparently, the court assumed jurisdiction pursuant to 28 U.S.C. § 1471(b), (c). Third, finding that it had the power to interpret the agreement, it specifically found that the debtor's proposal to pay $300 per month toward the educational expenses is a reasonable figure.

The debtor challenges whether the agreement to provide educational expenses constitutes maintenance or support within the meaning of § 523(a)(5). Defendant challenges the bankruptcy court's jurisdiction to establish or modify the debtor's obligation to pay for educational expenses. Alternatively, defendant argues that the bankruptcy court should abstain from making any determination on those issues.

■ While debtor argues that state law provides that there is no legal obligation on a parent to support or educate an adult, the issue of what constitutes maintenance and support will be determined under the bankruptcy laws, not state law. 3 Collier on Bankruptcy, ¶ 523.15(1). In addition, while debtor argues that inasmuch as the son is of

majority and not a child, any obligations to him are not maintenance and support within the meaning of § 523(a)(5). Yet, the bankruptcy court, in its August of 1981 order, found:

> 11 U.S.C. § 523(a)(5) did not limit the word "child" by prefacing it with the word "minor." Accordingly, "child" as it is used in 11 U.S.C. § 523(a)(5) includes a child of the debtor who has reached the age of majority.

Order at 3. There is no indication that, as a matter of law, this ruling is erroneous. Beyond that, the bankruptcy court apparently factored in the intention of the parties as deduced from the separation agreement as well as the surrounding circumstances to conclude that the providing of educational expenses was more than just a mere necessity. While the law appears to be that in analyzing whether an obligation is to be construed as maintenance and support a court is to evaluate the true nature of the claim or obligation as well as the scope of the debtor's duty to provide for the well being of the child, e.g., *In Re Morris,* 14 B.R. 217 (Bkrtcy.D.Colo.1981), there is no showing that the bankruptcy court either used improper criteria or weighed the criteria ineffectively. As such, this court cannot conclude that, as a matter of fact, the bankruptcy court was "clearly erroneous" in concluding that the debtor's obligation to provide educational expenses is maintenance and support. Accordingly, as to this point, the bankruptcy court is affirmed.

Section 1471 of the Judicial Code provides, in pertinent part, as follows:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11.
>
> The bankruptcy court for the district in which a case under Title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

28 U.S.C. § 1471(b), (c). Apparently, the bankruptcy court premised that this statute provides federal courts with jurisdiction to go beyond a determination of whether a debtor's support obligation was dischargeable and allow its inquiry into the interpretation of the separation agreement. Article III grants federal courts jurisdiction over cases "arising under" the Constitution and federal laws. While the Bankruptcy Reform Act confers jurisdiction on matters "arising under" Title 11, or "arising in" or "related to" cases under Title 11, 28 U.S.C. § 1471(b), the legislative history indicates that three bases should receive an expansive reading. S.Rep. No. 989, 95th Cong., 2d Sess. 153–54 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, 5939–40. Insofar as a bankruptcy court would have jurisdiction to entertain the interpretation of a domestic relations agreement, it is the grant of jurisdiction over cases "related to" a bankruptcy that would be implicated. In such a case, however, substantive rights of the parties would be affected by the bankruptcy court's jurisdictional decision. As such, such an order would not be "necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. The court notes that a bankruptcy court has authority to decline jurisdiction when to do so otherwise would frustrate rather than serve the ends of justice. 28 U.S.C. § 1471(d). The interests of justice may encompass concerns of comity and the appropriate relation between federal and state courts. *See Hurt v. Cypress Bank,* 9 B.R. 749, 754–55 (Bkrtcy. N.D.Ga.1981) (Drake, J.). For an excellent background discussion of the subject matter jurisdiction of bankruptcy courts, *see* Note, Bankruptcy and the Limits of Federal Jurisdiction, 95 Harv.L.Rev. 703 (1982).

> [C]ertain types of civil proceedings should be held not to be within the jurisdiction of the bankruptcy court, even though the debtor is involved in those proceedings. For example, divorce or child custody matters are so intimately involved with state policies and law, and so tangentially involved with the Title 11 case, that they probably are not "related to" the Title 11 case. That is, there must be some reasonable nexus between a particular civil proceeding and the Title 11 case to bring

that proceeding within the section 1471(b) grant of jurisdiction.

1 Collier on Bankruptcy ¶ 3.01.

The United States Supreme Court in 1899 stated: "Within the States of the Union, the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the State, and not to the laws of the United States." *Simms v. Simms,* 175 U.S. 162, 167, 20 S.Ct. 58, 60, 44 L.Ed. 115 (1899). In fact, the Court has indicated since 1858 the lack of a nexus between federal jurisdiction and domestic relations. *Barber v. Barber,* 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1858). ("We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony.") *See also In Re Burrus,* 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 1500 (1890) (a district court has no authority to issue a writ of habeas corpus to restore an infant to the custody of its father when unlawfully detained by its grandparents).

In the case *sub judice,* there is no allegation that a conflict exists between federal and state rules for the allocation of a federal entitlement. *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1978). Simply, the issue of an interpretation of a separation agreement and its translation into pecuniary terms presents no federal question. *See Ohio ex rel. Popovici v. Agler,* 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930).

The bankruptcy court's fundamental error was its attempt to go beyond the determination of whether the debtor's obligation to provide educational expenses was dischargeable. Notwithstanding the recent decision in *Northern Pipeline,* Congress surely did not intend a bankruptcy court to enter the realm of domestic relations matters. It clearly had no jurisdiction to set itself up as a bankrupt's domestic relations court by first establishing a child support obligation, and then reserving power to modify it based on changed conditions.

■ Accordingly, this court holds that bankruptcy courts are without jurisdiction to establish or to modify a debtor's obligation for child support, including the obliga-

tion to pay for educational expenses. Insofar as the bankruptcy court went beyond its determination as to whether an agreement to provide educational expenses is maintenance and support, by inquiring into the interpretation of paragraph 3(c) of the separation agreement and thereupon translating its interpretation into a dollar amount, the bankruptcy court's action is hereby REVERSED.

## IV.

Debtor/cross-appellant argues that the bankruptcy court erred in holding that the arrearage of child support which Mr. Harrell owed at the time of the filing of his Chapter 7 voluntary petition is non-dischargeable. This court disagrees.

■ In its order of August 18, 1981, the bankruptcy court found that "[t]he separation agreement by its terms set the parameters for the payments to be made by the debtor to his wife and son which were in the nature of alimony, support and maintenance." Order at 2. 11 U.S.C. § 523(a)(5) explicitly exempts from discharge child support. This court has already concluded that (i) Congress impliedly balanced any equitable policies by providing for non-dischargeability if a bankruptcy court finds alimony, support, and maintenance in the nature of alimony, support, and maintenance; and (ii) the court below was not erroneous in holding that "child," as it is used in § 523(a)(5), includes a child who has reached the age of majority. Therefore, the court below is AFFIRMED to the extent that it held that any arrearage of child support owed by debtor is non-dischargeable.

■ The court, however, did not stop there. The court, after finding the child support arrearage non-dischargeable, stated:

The Court reminds the debtor of his representations that as his economic circumstances improve, he would provide further assistance to his son toward meeting his educational expenses. At any time that there is a material change in the debtor's economic circumstances, the debtor's son may seek an increase in the

$300 per month payments which he is to receive from the debtor commencing October 1, 1982.

Order at 5–6 (October 1, 1982). Given the analysis of Section III of this order, the court concludes that once the court found these arrearages non-dischargeable, its inquiry was at an end. In other words, the finding of non-dischargeability exhausts its jurisdiction. Therefore, any conclusion or finding by the bankruptcy court below that it had reserved power to itself to modify or enforce the child support award is REVERSED.

### CONCLUSION

1. 11 U.S.C. § 523(a)(5) specifically exempts from discharge alimony, support, and maintenance, to the extent that the obligation is actually for or in the nature of the support and maintenance of the spouse, former spouse, or child of the debtor. In the court below, Judge Drake specifically found that the payments to be made by the debtor to his wife and son were in the nature of alimony, support, and maintenance. The utilization of the statutory construction maxim of *expressio unius est exclusio alterius*—or Congress means what it says and says what it means—renders the balancing process by the court below inappropriate. Therefore, on the issue of whether the debtor's obligation for alimony arrearages was dischargeable, the court below is REVERSED.

2. The finding by the court below that the separation agreement's providing for educational expenses is in the nature of maintenance and support is not clearly erroneous. In addition, the court's reading of "child" as it is used in § 523(a)(5)(B) is not erroneous. Therefore, the bankruptcy court's holding that debtor's obligation to pay child support and obligation to pay his son's college expenses are not dischargeable is AFFIRMED.

3. Given (i) the Supreme Court's admonition that domestic relation matters are traditionally reserved for the appropriate state court, (ii) comity and appropriate relations between federal and state courts in the matters of domestic relations, (iii) the lack of a federal interest in quantifying a bankruptcy court's interpretation of a separation agreement, (iv) Article III's granting to federal courts a limited jurisdiction, and (v) a bankruptcy court's intruding into areas traditionally reserved to state domestic relations courts does not affect the interest of judicial efficiency; the court below erred in translating paragraph 3(c) of the separation agreement into a dollar amount, and reserving to itself power to modify the child support award.

4. The bankruptcy court is AFFIRMED to the extent that its holding that any arrearage of child support owed by debtor is non-dischargeable is neither erroneous nor clearly erroneous.

For these reasons, the decision of the bankruptcy court below is AFFIRMED IN PART and REVERSED IN PART.