In re Walter ALLOWAY, Carolyn Alloway, Debtors.

Ruth RANKIN a/k/a Ruth Alloway, Plaintiffs,

v.

Walter ALLOWAY, Defendant.

Bankruptcy No. 82–04590G.
Adv. No. 83–0128G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 10, 1984.

Henry Wessel, Wessel & Carpel, Philadelphia, Pa., for plaintiff, Ruth Rankin a/k/a Ruth Alloway.

David Rosenberg, Media, Pa., for defendant, debtor, Walter Alloway.

Samuel M. Brodsky, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether we should grant the husband/debtor's former spouse an exception to discharge under 11 U.S.C. § 523(a)(1) and (a)(5). For the reasons stated herein we will deny the requested relief.

The parties have expressly waived an evidentiary hearing on this matter, so the following evidence has been drawn from the parties' stipulation and uncontested statement of facts.[1] Ruth Rankin ("Rankin") and her then husband, Walter Alloway ("the debtor"), moved toward dissolving their marriage by executing a property settlement agreement on January 11, 1980. In part, the agreement transferred the debtor's interest in a jointly held parcel of realty to the wife and further provided that the debtor would be responsible for the payment of several liens on the property held by the Internal Revenue Service ("IRS").

"[The debtor's] assumption of responsibility of the tax liability was necessary to permit [Rankin] to maintain the household for herself and her son."[2] Prior to the execution of the property settlement agreement Rankin received $25.00 per week from the debtor for her own maintenance and $125.00 for that of her child although after the agreement was signed she received only $85.00 per week for the child's maintenance. Rankin was compelled to sell the realty on April 10, 1981, due to her inability to maintain it because of insufficient income. To complete settlement, Rankin satisfied the IRS tax liens. She did not receive a written assignment from the taxing authority for the payment. At the time of the sale the debtor's wages had been garnisheed for payment of the tax. Shortly thereafter a state arbitration proceeding fixed the debtor's obligation at $11,710.86. The debtor filed a petition for relief under chapter 7 of the Code on September 28, 1982. Rankin commenced the action at bench seeking an exception to the debtor's discharge of the said debt pursuant to 11 U.S.C. § 523(a)(1) and (a)(5).

■ In pertinent part § 523(a) states as follows:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(6) of this title, whether or not a claim for such tax was filed or allowed:

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. Stipulation of Facts, p. 2.

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax; [or]

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

\* \* \* \* \* \*

The burden of proving an exception to discharge is on the party seeking such relief. *Schlecht v. Thornton,* 544 F.2d 1005, 1006 (9th Cir.1976); *Household Finance Corp. v. Danns,* 558 F.2d 114, 116 (2d Cir.1977); *Kleppinger v. Kleppinger* (In Re Kleppinger), 27 B.R. 530, 531 (Bkrtcy.M.D.Pa.1982). *In Re Vickers,* 577 F.2d 683, 687 (10th Cir. 1978).

In addressing § 523(a)(1), Rankin asserts that under § 509(a)[3] she became subrogated to the IRS's purportedly nondischargeable claim against the debtor upon her payment of his tax liability. The clear weight of authority holds that one who has paid the tax liability of another, subject to the limitations of § 509(a), may be subrogated to the claim of the taxing authority and may thus seek an exception to discharge based on that claim. *Western Surety Co. v. Waite,* 698 F.2d 1177 (11th Cir. 1983); *Thomas International Corp. v. Morris International Corp. v. Morris* (In Re Morris), 31 B.R. 474 (Bkrtcy.N.D.Ill.1983); *Woerner v. Farmers Alliance Mutual Ins. Co.* (In Re Woerner), 19 B.R. 708 (Bkrtcy.D. Kan.1982); *In Re Co-Build Companies, Inc.,* 21 B.R. 635 (Bkrtcy.E.D.Pa.1982) (in which we reviewed the cases on subrogation of tax claims under the Bankruptcy Act of 1898); *contra National Collection Agency, Inc. v. Trahan,* 624 F.2d 906 (9th Cir.1980) (holding debt to be dischargeable under the Bankruptcy Act of 1898 since exception to discharge undermines the "fresh start" afforded by a discharge in bankruptcy). Consequently, we hold that, under the Code, one who pays the tax claim of another may be subrogated to the right of the taxing authority to seek an exception to discharge. Notwithstanding, "[s]ubrogation is not a matter of strict right but is purely equitable in nature, dependent upon the facts and circumstances of each particular case." *Co-Build, supra,* 21 B.R. at 636. The nature of this equitable doctrine has been described as follows:

[Subrogation] is now a mechanism so universally applied in new and unknown circumstances that it is easy to overlook that it originates in equity. Every facet, whether substantive or procedural, is con-

---

**3.** Section 509 states as follows:

§ 509. Claims of codebtors

(a) Except as provided in subsections (b) and (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditor to the extent that—

(1) a claim of such entity for reimbursement or contribution on account of a payment of such creditor's claim is—

(A) allowed under section 502 of this title;

(B) disallowed other than under section 502(e) of this title; or

(C) subordinated under section 510 of this title; or

(2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under section 509 of this title, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

trolled by the equitable origin and aim of subrogation. These principles, so well established that to cite cases would be an affectation, find expression in accepted texts, as the following excerpts reflect. "Legal subrogation is a creature of equity not depending upon contract, but upon the equities of the parties." 50 Am.Jr. Subrogation § 3 at 679 .... It is "a consequence which equity attaches to certain conditions. It is not an absolute right, but one which depends upon the equities and attending facts and circumstances of each case." § 10 at 688. Because its object is "to do complete and perfect justice between the parties without regard to form of technicality, the remedy will be applied in all cases where demanded by the dictates of equity, good conscience, and public policy. Consequently, relief by way of subrogation will not be granted where it would work injustice, or where innocent persons would suffer, or where the result would be inimical to a sound public policy." § 11 at 690. As "subrogation is administered upon equitable principles, it is only where an applicant has an equity to invoke that the courts will interfere. Moreover, the equity of the party seeking subrogation must be strong and his rights clear, and his equity must be superior to that of other claimants." § 12 at 690–91. And it "will not be enforced to the prejudice of other rights of equal or higher rank, or to displace an intervening right or title, or to overthrow the equity of another person."

*Compania Anonima Venezolana De Navegacion v. A.J. Perez Export Co.,* 303 F.2d 692, 697 (5th Cir.1962), *cert. den.* 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276. The debtor urges the application of an additional principle of subrogation which is that the remedy will not be applied to one who was a mere volunteer in paying the obligation of another. *United States v. Commonwealth of Penna., Dept. of Highways,* 349 F.Supp. 1370, 1379 (E.D.Pa.1972). We find this principle to be inapplicable in the instant case since Rankin was secondarily liable on the tax obligation and consequently was not a volunteer in paying the debt.

■ Having dealt with the issue of subrogation Rankin briefly addresses the question of whether the tax claim at issue would be nondischargeable under § 523(a)(1) if it were still held by the IRS. She fails to present any legal or factual basis to support such a conclusion except for an argument apparently based on § 507(a)(6)(A)(i)[4] as incorporated in § 523(a)(1). Rankin argues that an application of the "limitation that the claim is to be for a tax for which the return was last due within three years before the filing of the petition ... would be inequitable [under] the circumstances of this case and would defeat rather than further the legislative purpose behind the nondischargeable tax scheme established by Congress." Contrary to Rankin's assertion, we find no equities in the case which would compel us to ignore the three year limitation period of § 507(a)(6)(A)(i). Consequently, the discharge of the debt is not barred by § 523(a)(1) since Rankin has failed to prove that the tax is of one of the types enumerated in that subsection.

■ As stated above Rankin also asserts that the debt is not dischargeable under § 523(a)(5) since the debtor's obligation to satisfy the tax lien was in the nature of alimony, maintenance or support. This section has four requirements: (1) the debt must be owed to a spouse, former spouse, or child of the debtor; (2) for alimony, maintenance or support; (3) arising under a separation agreement, divorce decree or proper-

---

4. In pertinent part § 507(a) states as follows:

§ 507. Priorities

(a) The following expenses and claims have priority in the following order:

    *    *    *    *    *    *

(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition.

    *    *    *    *    *    *

ty settlement agreement; and (4) it must not be assigned except under § 402(a)(26) of the Social Security Act. § 523(a)(5). Thus, § 523(a)(5) will not bar the discharge of an obligation from the debtor to his former spouse unless the debt is for alimony, maintenance or support. Whether in any given case such obligations are in fact for "support" and therefore not dischargeable in bankruptcy, is a question of fact to be decided by the Bankruptcy Court as the trier of the facts[5] in light of all the facts and circumstances relevant to the intention of the parties. *Williams v. Williams,* 703 F.2d 1055, 1057–58 (8th Cir.1983). This determination of intent is particularly difficult since the designations used by the parties or the divorce court in denominating whether a debt is alimony or part of a property settlement are not conclusive although due consideration to those labels is afforded her. *Id.; Stout v. Prussel,* 691 F.2d 859, 861 (9th Cir.1982). Further compounding the problem is the fact that, at the time the alimony is awarded and the property divided, very often the parties have no intent to differentiate between an alimony debt and a property settlement debt and will view both merely as financial obligations arising from the separation or divorce. The parties would have no purpose or rationale in making the distinction without some awareness of the legal consequences of the choice such as that found in the disciplines of tax and bankruptcy law. Since the parties typically have no actual intent to make the distinction we must usually establish their constructive intent from the facts and circumstances of the case.

■ The case law reveals that the following factors, as well as others, are relevant in distinguishing alimony from a property settlement debt: the label given to the debt by the parties and the state court; the express terms of the debt provision at issue in the settlement agreement or decree and its placement in the context of the document; whether the obligation is payable in installments over a substantial period of time or is a lump sum payment; whether

the obligation terminates on the occurrence of a condition such as the spouse's remarriage or death; whether the debt was allocated in lieu of a greater allowance of alimony; the relative income of the parties; the length of the marriage; children from the marriage who require support; whether the support award would be inadequate absent assumption of the debt; whether the debt was incurred for a necessity; and whether the debt is a past or future obligation. *In Re Coil,* 680 F.2d 1170, 1172 (7th Cir.1982); *Wolfe v. Wolfe* (In Re Wolfe), 26 B.R. 781, 784, (Bkrtcy.D.Kan.1982); *Hixson v. Hixson* (In Re Hixson), 23 B.R. 492, 495 (Bkrtcy.S.D.Ohio 1982); *Anderson v. Anderson* (In Re Anderson), 21 B.R. 335, 338 (Bkrtcy.S.D.Cal.1982).

■ In determining the dischargeability of a debt under § 523(a)(5) we must be mindful of two competing federal policies. The first is that granting the debtor a fresh start with his discharge of debts is a fundamental goal of bankruptcy relief. *Hixson,* 23 B.R. at 496. The second is that the former spouse rather than society should be responsible for the maintenance and support of members of the family which is split by divorce or separation. *Id.* These two considerations must be balanced with an eye toward the burden of proof on the dischargeability of a debt which is placed on the party seeking such relief. *Schlecht; Danns; Kleppinger, supra.*

In the case at bench Rankin asserts that the assumption of the IRS tax lien by the debtor was in the nature of alimony or support since the assumption was necessary for Rankin to maintain the house in light of the relative economic disparity of the parties. Rankin contends that the house was a necessity which the debtor agreed to help preserve solely by payment of the tax lien.

■ The record is less than replete with evidence for determining which of the two federal policies outlined above has primacy in the case before us. We have no documentation of record on the relative income of the parties, the cost of the housing at

---

**5.** Such a finding of fact may be set aside on appeal only if it is clearly erroneous. *Williams*

*v. Williams,* 703 F.2d 1055, 1058 (8th Cir.1983).

issue and the necessary expenses of each party. Although this information would not be necessary in every case under § 523(a)(5), it would be helpful here since the IRS tax debt does not bear the typical trappings of alimony, maintenance or support as the terms are typically used. It is a single lump sum obligation payable under all conditions rather than an obligation payable at periodic intervals for an uncertain period of time which would end at the death or remarriage of the spouse. Although the debtor's assumption of the debt would have eased Rankin's financial burden and may have aided here in keeping the house, this is not determinative. A debtor's promise to hold the other spouse harmless in the repayment of any joint obligations would always tend to ameliorate the spouse's financial condition, but unless the spouse bears her burden of proving that the debt is more akin to alimony, maintenance or support rather than a mere distribution of property, the debt will be discharged. In this case we find that Rankin has failed to meet this burden and we will deny her request that the debt created by her payment to the IRS in satisfaction of the tax lien be excepted from the debtor's discharge.