**In re William Warren BELL, Jr. aka Bill Bell, Debtor.**

**Janice D. BELL, Plaintiff,**

**v.**

**William Warren BELL, Jr., Defendant.**

**Bankruptcy No. 83–05288–H1–5.**
**Adv. No. 84–0415–H3.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

May 21, 1986.

David Speed Elder, Sewell & Riggs, J. Eugene Clements, Porter & Clements, Houston, Tex., for plaintiff.

Gary C. Miller, Mayer, Day & Caldwell, Houston, Tex., for defendant.

## MEMORANDUM OPINION

EDWARD J. RYAN, Bankruptcy Judge.

William Warren Bell, Jr. filed suit for divorce in the 245th Judicial District Court of Harris County, Texas in 1979, against his wife of 26 years, Janice D. Bell. They entered into a written agreement incident to divorce ("agreement") dated June 28, 1980, and the court with jurisdiction entered a final decree of divorce on August 4, 1980.

Two years later, plaintiff commenced contempt proceedings in the state court to encourage defendant to comply with the provisions of that contract.

On December 8, 1983, one day before the trial was to commence in state court, the defendant sought relief as a debtor under Chapter 11 of the Bankruptcy Code ("Code").

Thereafter on April 24, 1984, plaintiff filed a complaint in federal court, alleging defendant's general noncompliance with the agreement. She alleged, *inter alia*, that defendant owed her certain nondischargeable debts.

Plaintiff's complaint came on for trial on December 4, 1985.

Plaintiff claims defendant owes her $64,-000 for nonpayment of alimony from 1981 through 1985. Plaintiff contends alimony is a debt made nondischargeable under § 523(a)(5) of the Code.

Defendant, however, says that the monthly payments to his wife are dischargeable debts, because those payments are not in the nature of support, i.e. alimony, but are a division of community property.

Whether a particular debt is a support obligation or division of property is a question of bankruptcy law, not state law. The legislative history surrounding the enactment of § 523 of the Code makes it clear that what constitutes alimony, maintenance, or support is to be determined under bankruptcy law.[1]

To resolve the controversy whether the past due alimony payments owed by the defendant under the agreement constitute

1. H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 989, 95th Cong. 2nd Sess. 77–79 (1978) U.S.Code Cong. & Admin.News 1978, p. 5787. § 523 is a substantial reenactment of the exception to discharge of alimony, support or maintenance in § 17 of the Bankruptcy Act, 11 U.S.C. § 35(a)(7) (repealed). *See, e.g., In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir.1983); *In re Williams,* 703 F.2d 1055, 1056 (8th Cir.1983); *In re Spong,* 661 F.2d 6, 8 (2nd Cir.1981); *In re Petoske,* 16 B.R. 412, 413 (Bkrtcy.E.D.N.Y.1982).

a nondischargeable debt, it is necessary to examine § 523(a)(5) of the Code and the history behind it.

Family support obligations have long been excepted from discharge. The obligation of a husband to support his wife and family by providing them with the necessities of life has long been recognized as an inescapable duty.[2]

Prior to statutory enactment, the nondischargeability of family support obligations was based on the theory that the obligation to support a spouse or child was not a debt but a duty, and only a debt could be discharged.[3] Because alimony and child support stem from a husband's absolute duty to support his family and to protect communities from families being left destitute by irresponsible husbands and fathers,[4] such was not considered a debt.

In 1903, Congress amended the Act by providing that a discharge would not release a bankrupt from his liability "for alimony due or to become due or for maintenance or support of wife or child."[5]

Title 11 of the Code as in Section 17 of the Act, continues the theme that certain family obligations should not be discharged. 11 U.S.C. § 523.

Section 523(a)(5) of the Code provides that:

(a) A discharge under sections 727, 1141 and 1328(b) of this title [11 U.S.C. § 1141] does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other or-

der of a court of record or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

Section 523 of the Code is substantially similar to Section 17 of the Act and leaves unchanged the principle that obligations created by property settlements are divisions of property and are dischargeable in bankruptcy. 11 U.S.C. § 523(a)(5). The Code, however, did clarify the Act by including language regarding former spouses. 11 U.S.C. § 523(a)(5). The purpose of the change in the Code was to clarify that the obligation to pay alimony after a final judgment or decree of divorce continues to be a debt nondischargeable, even though the recipient is a former spouse.

To be a debt nondischargeable under section 523(a)(5), the Code requires that (i) the obligation must actually be for or in the nature of alimony or support; (ii) it must be payable to the spouse, child; and (iii) it must be in connection with a separation agreement, divorce decree, property settlement agreement or other order of a court of record. Liability for maintenance or support will be deemed nondischargeable if

**2.** *In re Spong,* 661 F.2d 6, 9 (2nd Cir.1981).

**3.** 1 Norton Bankruptcy Law and Practice § 27.-56, at 81 (1981).

**4.** *In re Chapman,* 20 B.R. 810, 812 (Bkrtcy. E.D. Va.1982), citing *Goggans v. Osborn,* 237 F.2d 186, 189 (9th Cir.1956) and *Westmoreland v. Dodd,* 2 F.2d 212 (5th Cir.1924) cert. denied, 267 U.S. 595, 45 S.Ct. 231, 69 L.Ed. 805 (1925).

**5.** Act of February 5, 1903, Ch. 487, 32 Stat. 798 (1903). Section 17a of the amended Act stated, in pertinent part, that:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... (7) are for alimony due, or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female or for breach of promise of marriage accompanied by seduction, or for criminal conversation ...

the aforementioned criteria are met. 11 U.S.C. § 523.

■ In determining whether an obligation constitutes alimony, maintenance, or support to a spouse or former spouse within the meaning of § 523(a)(5), or whether the obligation is in fact a division of property, bankruptcy courts look beyond the characterization placed on an award by the state court. *In re Nunnally*, 506 F.2d 1024 (5th Cir.1975); *Hixson v. Hixson*, 23 B.R. 492, 495 (Bkrtcy.S.D.Ohio 1982). *In re Jensen*, 17 B.R. 537, 539 (Bkrtcy.W.D. Mo.1982) The test is whether the debt was incurred or its payment directed in discharge of a matrimonial obligation for alimony, maintenance or support.

The majority of bankruptcy courts use several factors to determine whether the debt was incurred or its payment directed in discharge of a matrimonial obligation constitutes alimony, maintenance or support, or is a division of property. In ascertaining the underlying purpose of the state court decree or actual intentions of the parties, bankruptcy courts consider some or all of the following factors: the description and context of the disputed provisions in the divorce agreement; whether a lump sum or terminable periodic payments were provided for; the length of the marriage; whether children need to be provided for; the relative earning power of the spouses; the adequacy of support absent the payments in question; the parties' negotiations and understanding of the provisions, and the function which the award was intended to accomplish. *Hixson, supra*, at 495. *In re Fox*, 5 B.R. 317, 320 (Bkrtcy.N.D.Texas, 1980); *In re Holland*, 48 B.R. 874, 876 (Bkrtcy.N.D.Texas 1984); *In re Petoske*, 16 B.R. 412, 414 (Bkrtcy.E.D.N.Y.1982); *In re Eisenberg*, 18 B.R. 1001, 1003 (Bkrtcy.E.D. N.Y.1982). Some bankruptcy courts have expanded their list to include other factors.

■ Plaintiff refers to Section V of the agreement entered into between the parties, which is entitled "Alimony" and recites in pertinent part:

"The parties acknowledge that dividing marital property does not discharge all obligations arising from the marital relationship and that of similar importance are the difference in earning power between husband and wife, fault in breaking up the marriage...."

The evidence revealed in the case at bar that during their marriage of 26 years, the defendant was employed as an oil and gas attorney, while the plaintiff did not work outside the home. At the time of their divorce in August, 1980, there was a vast difference in earning power between the plaintiff and defendant. It is obvious that it would take plaintiff time to enter the work force and become self-supporting.

Consistent with the intent to support the wife until she was self-supporting is the provision of the agreement allowing for monthly installment of support payments to the wife. If the parties had intended for the money to be a division of community property, the parties would have agreed that the wife was due one lump sum.

It is striking to note that although the defendant now claims that the monthly payments were not intended as alimony, he admits listing those payments as alimony when he deducted them each year on his income tax return.

The intent of the parties in the case before us was to provide support for the wife. Only after careful negotiations did the parties agree that the defendant should pay to plaintiff 121 monthly installments of alimony for plaintiff's support and maintenance.

In reviewing whether the 121 monthly installments constituted alimony in the case at bar, a disposition on each of the factors previously set forth show that the monthly alimony payments set forth in the agreement constitute matrimonial obligation for alimony, maintenance or support for the wife, not a division of community property, making these payments nondischargeable under § 523(a)(5) of the Code.

Defendant shall pay plaintiff the sum of $64,000, plus interest from the date each

monthly amount was due, until it is paid in full.[6]

Defendant argues, however, that, even if the court determines that the monthly payments constitute an obligation to support, he should be entitled to a discharge of that obligation so as to allow him a "fresh start" as is intended under the Code.[7] Defendant contends that his ability to pay has substantially changed since the obligation originally arose, making enforcement of the monthly support payments inequitable. Defendant requests this court to consider his current general inability to pay.

Currently there exists a conflict within the circuits as to the effect of changed circumstances on the dischargeability issue regarding support obligations owed a debtor's family.

A few courts balance the need for continued support payments against the need of the debtor to gain a fresh start.[8]

The majority, however, hold that a bankruptcy court may not consider circumstances subsequent to the agreement providing support to the debtor's wife and children, nor any circumstances existing at the time the debtor's petition was filed.[9]

■ This court agrees with *In re Vickers*, 24 B.R. 112 (Bkrtcy.M.D.Tenn.1982), which states that bankruptcy courts should refrain from making an inquiry into the relative financial positions of the parties and should be restricted to a determination of the nature of the obligation at the time of the state court decree of divorce. A debtor whose financial circumstances have changed should pursue a modification of the divorce decree in state court.

Plaintiff's complaint also involves various other claims against the defendant. Some of those claims were resolved during the trial on the merits,[10] while other claims have subsequently become moot.

Plaintiff contends defendant concealed property and property rights from her subsequent to the signing of their agreement. Plaintiff demands a one-half community property interest in a contract to acquire a residence in Houston, Texas, to which the defendant did eventually take title. Not only was that contract to acquire the Houston property entered into by the defendant after the April 30, 1980, agreed contractual cutoff date for acquiring community property, but a foreclosure sale of that property, held prior to trial, left the defendant without title. Because defendant had no equity in the property, the foreclosure sale did not result in any excess funds to the defendant.

■ Plaintiff alleges defendant concealed from her an oil, gas, and mineral lease bonus paid to him on May 16, 1980. The agreement requires the disclosure of all of defendant's real property interests prior to April 30, 1980. Defendant com-

---

**6.** Plaintiff and defendant agree that only $68,000 of the $132,000 in alimony owed to plaintiff was paid as of December 4, 1985, leaving an outstanding balance owing of $64,000.

**7.** Although the policy justification for granting a debtor a discharge in bankruptcy is to provide him with a "fresh start" in life "... unhampered by the pressure and discouragement of pre-existing debt," competing policy reasons led Congress to explicitly except from discharge support obligations owed a spouse and child. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

**8.** *In re Warner*, 5 B.R. 434, 442, (Bkrtcy.D.Utah 1980); *In re Bedingfield*, 42 B.R. 641, 646 (S.D. Ga.1983); *In re Harrell*, 13 B.R. 302, 303 (Bkrtcy.N.D.Ga.1981); *In re Brace*, 13 B.R. 551, 554 (Bkrtcy.N.D.Ohio 1981).

**9.** *In re Jensen*, 17 B.R. 537, 540 (Bkrtcy.W.D.Mo. 1982); *In re Vickers*, 24 B.R. 112, 116 (Bkrtcy.M. D.Tenn.1982); *In re Harrell*, 33 B.R. 989, 993 (Bkrtcy.N.D.Ga.1983), aff'd 754 F.2d 902 (11th Cir.1985).

**10.** Defendant agreed to and shall pay plaintiff the sum of $5,562.98 plus interest, for expenses incurred by his daughter, Mary Laura Bell, but which were advanced by the plaintiff.

The defendant agreed to and shall pay the Internal Revenue Service the amount of $5,937.72, the balance due and owing on the 1980 amended tax return, plus interest and penalty charges, until the entire tax is paid in full.

Pursuant to Judge Peden's previous order regarding the diamond ring (SM & N, page 61), defendant shall either turn over the ring to Mary Laura or pay to plaintiff for the benefit of Mary Laura $2,000, the value of the ring.

plied with the agreement by providing plaintiff with his inventory and appraisal which fully disclosed his mineral interests in and to his property in Waller County.

Because the agreement specifies that property interests acquired after April 30, 1980, become the assets of the party who so acquires it, the mineral lease bonus paid on May 16, 1980, is the sole property of the defendant.

■ Plaintiff next seeks damages for failure of the defendant to comply with the agreement by maintaining a term life insurance policy on his life which designates his children as beneficiaries. Plaintiff claims on behalf of the beneficiaries that they are entitled to receive as damages from the defendant, either the value *in praesenti* of all future premium payments needed to maintain such a $100,000 term life insurance policy on defendant's life, or alternatively, the present value of such a $100,000 life insurance policy.

Defendant provided proof at trial that he currently has in effect a $100,000 term life insurance policy for the benefit of his children as required by Section V of the agreement. Although the policy coverage was lowered at one time to $50,000, the defendant is now in compliance with the agreement. Therefore, any relief sought by plaintiff regarding the failure of the defendant to maintain a term life insurance policy is denied.

■ Section V of the agreement requires the alimony payments to be secured by a mortgage on defendant's Louisiana property.

Plaintiff contends that defendant intentionally and fraudulently delivered to her a mortgage which only purported to comply with Section V of the agreement, but which does not create a valid security interest in defendant's Louisiana real estate.

The parties negotiated and bargained in arriving at the agreement. If the security instrument does not provide for executory process (nonjudicial foreclosure), it is not this court's duty to modify that document agreed to both parties. Both parties and their respective attorneys had ample time to review the documents in connection with the divorce.

The untitled instrument marked as Exhibit 13 is a valid mortgage on the Louisiana real property, and therefore does create a security interest for the benefit of plaintiff.

Plaintiff next asserts that defendant refuses to turn over all of his Reading & Bates stock to his children as required by the agreement. Defendant contends that he has complied with the agreement because he has already transferred all of the stock to his children.

■ Testimony at trial disclosed a stock split prior to defendant's transfer of the stock to his children. Defendant emphatically testified that he bought no Reading & Bates stock after the date of the divorce, but he could not explain why he was continuing to receive dividend checks in 1983, after the alleged transfer to his children of all his stock. Defendant obviously has in his possession stock, as a result of the stock split. Defendant is hereby directed to transfer any Reading & Bates stock in his possession to his children.

■ Plaintiff contends that all of the foregoing, such as defendant's refusal to pay contractual alimony and to comply with various other terms of the agreement, constitutes a repudiation and an anticipatory breach of the agreement by the defendant. Plaintiff argues defendant's anticipatory breach justifies the immediate payment to her of all future alimony payments as well as punitive damages.

Plaintiff failed to demonstrate that defendant's conduct and actions in their entirety constituted a repudiation or anticipatory breach of the agreement. Plaintiff is not entitled to an acceleration of her future alimony payments, nor an award of punitive damages.

■ Plaintiff next raises the issue of payment of her attorney's fees by the defendant. Under both the Act and the Code, an obligation to pay attorney's fees is so

intertwined with the obligation of support as to be in the nature of support or alimony, and therefore excepted from discharge.[11]  Defendant shall pay plaintiff the sum of $45,000 for reimbursement of her attorney's fees in connection with this matter.[12]

It is so ordered.

Let judgment with costs enter accordingly.

---

11.  *In re Nunnally,* 506 F.2d 1024 (5th Cir.1975). *See, e.g., In re Williams,* 703 F.2d 1055 (8th Cir.1983); *In re Spong,* 661 F.2d 6 (2d Cir.1981); *Hack v. Laney,* 53 B.R. 231 (Bkrtcy.N.D.Texas 1985); *In re Morris,* 14 B.R. 217 (Bkrtcy.D.Colo. 1981); *In re D'Antuono,* 37 B.R. 595 (Bkrtcy.D. Mass.1984); *In re Snyder,* 37 B.R. 519 (Bkrtcy. M.D.Pa.1984); *In re Dutra,* 33 B.R. 773 (Bkrtcy. D.R.I.1983); *In re Romano,* 27 B.R. 36 (Bkrtcy. M.D.Fla.1983); *In re Bell,* 5 B.R. 653 (Bkrtcy.W. D.Okla.1980).

12.  During the trial, defendant stipulated that plaintiff had incurred $45,000 in attorneys' fees in connection with this matter.