In re Ronald Ray WOLFE, and Teresa Renee Wolfe, a/k/a Teresa Renee Benitez, Debtors.

Linda Diane WOLFE, Plaintiff,

v.

Ronald R. WOLFE, Defendant.

Bankruptcy No. 82–20835.
Adv. No. 82–0246.

United States Bankruptcy Court,
D. Kansas.

Dec. 22, 1982.

**782**

Ronald Ray Wolfe, Teresa Renee Wolfe, Edgerton, Kan., George J. Schlagel and Donna Kaser, Olathe, Kan., for debtors/defendant.

Kris L. Arnold, Kansas City, Kan., Trustee.

Linda Diane Wolfe and Andrew R. Ramirez, Lawrence, Kan., for plaintiff.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on November 2, 1982, upon a motion by plaintiff, Linda Diane Wolfe, for relief of restraining order and Order releasing garnishments. Plaintiff appeared in person and by her attorney, Andrew R. Ramirez. Debtor/defendant, Ronald Wolfe, appeared in person and by his attorneys, George J. Schlagel and Donna Kaser of Schlagel & Sloan.

The parties agreed that the underlying issue was the dischargeability of defendant's obligation to Tower State Bank pursuant to the parties' divorce decree. Although this issue was not set out in the pleadings, the Court agreed to resolve the issue pursuant to Rule 15(b) of the Federal Rules of Civil Procedure.

After a full evidentiary hearing, the Court ruled from the Bench that the defendant's obligation was in the nature of alimony, support or maintenance and therefore, nondischargeable.

The debtor/defendant filed a Notice of Appeal on November 10, 1982. The Court had reserved the right to file a supplemental opinion in the event of appeal.

## FINDINGS OF FACT

Based on the exhibits, testimony, pleadings and the file herein, the Court finds as follows:

1. That this Court has jurisdiction over the parties and subject matter; and that venue is proper.

2. That in early 1982, Linda and Ronald Wolfe decided to file a Petition for Divorce. Before seeking advice of counsel, they agreed on the terms of their divorce, including child support, child custody, debt assumption and division of property. Ronald had offered $200.00 semi-monthly for child support, but after considering their relative incomes and expenses, they agreed that he should pay $150.00 semi-monthly for child support, plus the $178.00 monthly payment to Tower State Bank, which was secured by the 1981 Plymouth Sapporo in Linda's possession. They further agreed that after the Bank loan was paid in full, Ronald would increase the child support payments to $200.00 semi-monthly.

3. After a search for an attorney in the phone book, Kurt A. Schoeb was contacted and asked to represent both the parties in the interest of economy. In the divorce action, Mr. Schoeb was Linda's attorney of record. However, he advised both parties and in all meetings with him, both Linda and Ronald were present. He showed them the Johnson County child support guidelines (*Def.Ex. A.*), which indicated that a noncustodial parent with Ronald's income should pay about $400.00 per month for two children. Based on these discretionary guidelines, Ronald and Linda determined that their agreement was fair.

4. That they were divorced on March 11, 1982, in the District Court of Johnson County, Kansas. The divorce decree (*Pl.Ex. # 1*), which incorporated the terms of their agreement, stated in pertinent part, as follows:

*"8. That said children are dependent upon defendant for support. That the defendant has agreed to pay to the plaintiff the sum of One Hundred and Fifty Dollars every two weeks as and for child support and that payment of said sum is*

in the best interest of the minor children. Further, the parties agree that after the full payment of the parties' obligation to Tower State Bank, child support payments should be increased to the sum of Two Hundred Dollars every two weeks, all subject to the continuing jurisdiction of the Court.

9. That the parties are indebted to Tower State Bank in the approximate sum of Five Thousand Dollars ($5,000.00), which sum is secured by the parties' 1981 Plymouth Sapporo automobile, which obligation shall be the defendant's sole and separate responsibility. That the plaintiff is awarded said 1981 Plymouth Sapporo automobile as her sole and separate property, free and clear of any right, title, or interest of the defendant."

5. That at the time of the divorce, Linda was making $3.30 per hour and rarely had the opportunity to work overtime. Ronald was making $9.00 per hour plus overtime; and his take home pay was about $575.00 every two weeks. He was hospitalized for about two weeks for surgery around the time of the divorce and off work a total of eight weeks, but he received 60% of his regular income as disability payments during this period.

6. That Ronald defaulted on the Tower State Bank obligation in August of 1982 and the Bank repossessed the car. The car was Linda's sole means of transportation to work and to Topeka, Kansas, where both children had to go to receive periodic medical treatment for a bone disease.

7. That Ronald and his present wife, Teresa, filed this Chapter 7 petition in bankruptcy on September 1, 1982.

8. That as of the filing of the petition, Ronald was still making $9.00 per hour, but Linda was unemployed.

## CONCLUSIONS OF LAW

Section 523 of 11 U.S.C. states in pertinent part as follows:

"§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;"

The legislative history indicates that the debtor's assumption of certain joint debts is nondischargeable under § 523(a)(5) as well:

"This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement." H.R. 95–595, 95th Cong., 1st Sess. (1977) 364, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320.

■ The debtor argued that the legislative history was unpersuasive because his assumption of debt was not coupled with a hold harmless agreement. This Court finds that that is an immaterial distinction. As long as the purpose of the debt assumption was to provide alimony, maintenance or support, it should not matter that the debt assumption was not reinforced with a hold harmless agreement.

■ The Court must determine whether the instant assumption on the Tower State Bank obligation was in essence alimony, maintenance or support. The most pertinent consideration is the parties' intent. This can be determined from the four cor-

ners of the divorce decree and property settlement agreement, when unambiguous. *Drummond v. Drummond,* 209 Kan. 86, 495 P.2d 994 (1972); *In re Payne,* CCH ¶ 67,997 (D.Nev.1981). But when the document is ambiguous, you must consider all of the circumstances in determining intent.

■ Courts look to a variety of factors in making such a determination. Those factors were discussed in detail in a previous opinion of this Court. See *In re Huggins,* 12 B.R. 850; CCH ¶ 68,319 (Bkrtcy.D.Kan. 1981). In short, a debt will generally be considered in the nature of alimony, maintenance or support if:

1. It was incurred for a necessity. *Matter of Steingesser,* 602 F.2d 36 (2d Cir.1979);

2. It was for a current or future obligation. *Matter of Woods,* 561 F.2d 27 (7th Cir.1977);

3. The party assuming the debt had significantly more income than the other party. *In re Diers,* 7 B.R. 18, 6 B.C.D. 983, 2 C.B.C.2d 1330 (Bkrtcy.S.D.Ohio 1980);

4. The debt assumption was contingent on the spouse's not dying or remarrying, as alimony often is structured. *In re Taff,* 10 B.R. 101, 7 B.C.D. 493, 4 C.B.C.2d 65, CCH ¶ 67,938 (Bkrtcy.D. Conn.1981);

5. The support award would be inadequate absent assumption of the debt. *Nitz v. Nitz,* 568 F.2d 148 (10th Cir. 1977).

■ Clearly, this debt assumption was not structured like alimony. However, in applying the other factors, the Court finds that the debt assumption was in the nature of child support.

First, the debt was incurred for a necessity. Although Ronald testified that he bought the car as a gift to his wife, she testified that the car was her only means of transportation to and from work. She also testified that she needed the car to take their sons to Topeka, the only place in Kansas where they could get medical treatment for their particular bone disease.

Secondly, defendant, Ronald had significantly more income than Linda at the time of the divorce, and presently. He was making $9.00 per hour plus overtime while she was only making the minimum wage of $3.30. Such a wide disparity in incomes evidenced an intent to make the debt assumption part of the support award.

Thirdly, absent the debt assumption, the support award would have been inadequate. Linda would have had difficulty raising their sons on $150.00 semi-monthly plus her minimal income if she also had to make the $178.00 monthly payment to Tower State Bank to keep her only means of transportation. Apparently, the parties realized and sought to avoid such difficulty by tying the support and car payments together. In both the decree and property settlement agreement, the car payment was mentioned in the same paragraph as the child support. Furthermore, after the parties reviewed the Johnson County guideline of $400.00 per month, they were certain that their agreement of $150.00 semi-monthly plus the $178.00 monthly car payment was fair and adequate.

Moreover, the fact that the parties agreed to an increase in child support once the car was paid for evidenced an intent that the assumption of the car loan be a component of the child support award. The Court finds that the circumstances overwhelmingly evidence an intent that the debt assumption be in the nature of child support.

The debtor argued that even if the debt assumption was child support, it was dischargeable under § 523(a)(5)(A) as an assignment to another entity, since Ronald was to pay the Bank directly. The debtor cited a decision of this Court, *In re Crawford,* 8 B.R. 552 (Bkrtcy.D.Kan.1981) which applied the assignment exception and held an attorney fee award nondischargeable.

The debtor did not acknowledge a subsequent opinion by this Court wherein the Court held that the assignment exception was not applicable to an attorney fee award made payable directly to the attorney. See

*Schwarz v. Rank,* 12 B.R. 418, 7 B.C.D. 76, CCH ¶ 68,400 (Bkrtcy.D.Kan.1981). Therein, this Court distinguished the *Crawford* decision, finding that in *Crawford,* the attorney fee award was not in the nature of alimony, maintenance or support and thus, was dischargeable irrespective of who it was payable to. However, in *Rank,* this Court found that the plaintiff was in dire need of support and the attorney fee as a component of support. The Court further found that the attorney fee was made payable to the attorney in interest of convenience, and that the form of the award should not control the substance of the award.

Here the Court finds that Ronald's assumption of the debt to Tower State Bank was part of the support award. The fact that he was to pay the Bank directly rather than through his ex-wife should not defeat the nondischargeable nature of the debt. Divorce decrees typically provide for debt assumption in lieu of or as part of alimony, support or maintenance. It is inconvenient to require that the debt be paid through the spouse rather than directly to the creditor. Oftentimes it is impractical as well, in view of the common hostility and lack of communication between divorced parties.

Furthermore, the Court doubts that the drafters of § 523 intended that nondischargeable debt assumptions be rendered dischargeable if the payments did not go through the spouse. The legislature has already closed the door on one unintentional loophole in the assignment exception to § 523(a)(5). In the Omnibus Budget Reconciliation Act of 1981, P.L. 97–35, 95 Stat. 357, August 13, 1981, the legislature made the assignment exception not applicable to assignments of child support to state agencies. The legislature decided, as a policy matter, that a debtor should not escape support obligations when his family was forced to assign its support to the state to get welfare benefits.

The legislature would probably concur, then, that when a debtor's spouse assigns a debt assumption so that the payments go directly to the creditor, the debtor should not be able to discharge the obligation when it is in the nature of alimony, maintenance, or support, since the spouse is actually benefitting from the convenience of not having to forward payments received from the other spouse to the creditor.

The Court finds that in this case, it is reasonable that the spouse who assigned the debt assumption simply for convenience should still have the benefit of a nondischargeable claim in bankruptcy. The Court holds therefore, that the assignment exception is not applicable to the instant debt assumption and that Ronald Wolfe's assumption of the Tower State Bank obligation is not dischargeable.

THIS MEMORANDUM SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.