In re James Richard BROWN, Debtor.

Claudette L. BROWN, Plaintiff,

v.

James R. BROWN, Defendant.

Bankruptcy No. 80–20260.
Adv. No. 82–0179.

United States Bankruptcy Court,
D. Kansas.

March 29, 1983.

Eric C. Rajala, Kansas City, Kan., for plaintiff.

Steven J. Wells, Overland Park, Kan., for defendant.

Donald E. Bucher, Kansas City, Kan., trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for trial on November 19, 1982, upon a Complaint to determine the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(5). Plaintiff, Claudette L. Brown, appeared in person and by her attorney, Eric C. Rajala. Debtor/defendant, James R. Brown, appeared in person and by his attorney, Steven J. Wells.

## FINDINGS OF FACT

Based on the exhibits, testimony, pleadings and the file herein, this Court finds as follows:

1. That this Court has jurisdiction over the parties and subject matter pursuant to Rule 42 of the United States District Court for the District of Kansas; and that venue is proper.

2. That James and Claudette Brown bought a house on an option contract in 1969, as husband and wife. On November 25, 1977, they executed a note and mortgage to Associates Financial Services Company of Kansas wherein they financed the loan on their house and other installment debts. They gave Associates a mortgage and a security interest in two vehicles and assorted household goods.

3. That on December 8, 1977, Mrs. Brown filed a petition for divorce in the District Court of Wyandotte County, Kansas. Before the divorce action, they had negotiated and agreed to the terms of the decree. Mrs. Brown was represented by counsel and appeared at the divorce hearing. Mr. Brown did not appear.

4. That on February 28, 1978, the divorce was granted. Mrs. Brown was awarded custody of their four children, then ages 17, 15, 12 and 8. Other pertinent provisions of the decree were as follows:

*"5. That the plaintiff and defendant have agreed upon an equitable division of the personal property of the parties. . . .*

*Provided, each of the parties is to assume any indebtedness upon the personal property set over onto each, and to save and hold the other harmless from execution by creditors upon any such obligation.*

*With respect to the said residence of the parties, the parties have further agreed as follows: Plaintiff is to continue to occupy the residence and the legal title to the same shall be set over to plaintiff*

*by quit claim deed from defendant; provided, defendant is to retain a one-third (⅓) interest in the equity of the parties in the residence, which shall be a lien against the same. Defendant is not to foreclose his said interest in the residence, but shall be entitled to receive the same in the event of either voluntary sale of the residence by plaintiff (or her legal representatives) or when the present mortgage against the residence matures in approximately ten (10) years, which time corresponds with the youngest child of the parties attaining the age of eighteen (18) years. For these purposes, the equity of the parties shall be the amount realized upon sale of the residence less mortgaged indebtedness, taxes, liens, encumbrances, expenses of sale and closing costs.*

*In the interim, defendant is to make the house payments on the residence, to include principal and interest; and, defendant is to be entitled to any tax benefit realized from making such payments.*

*6. That plaintiff and defendant are both regularly employed, and that neither party is dependent on the other for maintenance and support. However, that plaintiff is unable to provide for the minor children of the parties without financial assistance from the defendant. The parties to this action have mutually agreed that defendant is to continue to pay $140.00 per month, payable $70.00 per pay day, for the support of the minor children.*

*Defendant is to assume responsibility for medical bills which may be incurred for treatment of the children during their minority. Further, defendant is to continue to maintain the children as beneficiaries upon his existing life insurance so long as each child is a minor.*

*That the plaintiff and defendant are to split the income tax exemptions on the children, with the plaintiff to claim the odd exemption where applicable."*

5. That the uncontroverted testimony of Mrs. Brown was that she agreed to a mere

$140.00 a month in child support because Mr. Brown agreed to assume the debt to Associates, a monthly obligation of $283.00.

6. That at the time of the divorce, Mrs. Brown's net monthly income was $450.00, not including the $140.00 child support. Her living expenses were $573.18, excluding the Associates debt. In addition, she assumed two debts in the decree, with total monthly payments of $51.00. Thus, her total monthly expenses were $624.18.

7. That at the time of the divorce, Mr. Brown's net monthly income was $799.00. His living expenses were $375.00, excluding the Associates debt. He agreed to assume the $283.00 monthly obligation to Associates and other installment debts with monthly obligations of $282.00. Thus, his total monthly expenses, including the child support obligation, were $1,080.50.

## CONCLUSIONS OF LAW

11 U.S.C. § 523(a)(5) states as follows:
"§ 523. Exceptions to discharge.

*(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—*

\* \* \* \* \* \*

*(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—*

*(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or*

*(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;"*

### I.

Mr. Brown contends that his obligation to Associates is a debt owed to a third party and thus dischargeable under § 523(a)(5)(A). This Court has previously

ruled that if an obligation is actually in the nature of alimony, maintenance or support, it is nondischargeable whether it is payable to the debtor's spouse or directly to the creditor, unless it is expressly assigned. See *In re Rank,* 12 B.R. 418, 8 B.C.D. 76, CCH ¶ 68,400 (Bkrtcy.D.Kan.1981) [attorney fees]; *In re King,* 15 B.R. 127, CCH ¶ 68,603 (Bkrtcy.D.Kan.1981) [attorney fees]; *In re Wolfe,* 26 B.R. 781 (Bkrtcy.D.Kan.1982).

Given the incompatibility and often lack of communication between divorcing parties, obligations are often made payable directly to the creditor rather than through the spouse. Such measures, designed to avoid defaults or delay, should not destroy the otherwise nondischargeable nature of such obligations. Moreover, the legislative history indicates that the drafters of § 523(a)(5) intended to include debts resulting from hold harmless agreements, irrespective of who the payee was:

"... *This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.*" H.R. 95–595, 95th Cong., 1st Sess. (1977) 364; and see S.R. 95–989, 95th Cong., 2nd Sess. (1978) 78, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320.

## II.

The essential question herein is whether the assumption of the debt to Associates was in the nature of alimony, maintenance or support within the meaning of § 523(a)(5)(B). What constitutes alimony, maintenance or support is determined under bankruptcy, not state, law. See H.R. 95–595, 95th Cong., 1st Sess. (1977) 364.

Bankruptcy Courts have considered a number of factors in resolving this issue. See *In re Huggins,* 12 B.R. 850, CCH ¶ 68,319 (Bkrtcy.D.Kan.1981) for a full discussion. Of utmost importance is the parties' intent. Their intent can be determined from the four corners of the decree, if it is unambiguous. *In re Payne,* CCH ¶ 67,997 (D.Nev.1981).

More often than not, the decree is ambiguous and the court must look to extrinsic evidence to determine intent. The following tests have been used in determining intent:

1. Whether the debt was incurred for "necessaries". *Matter of Steingesser,* 602 F.2d 36 (2d Cir.1979); *Poolman v. Poolman,* 289 F.2d 332 (8th Cir.1961);

2. Whether there was a wide disparity in the parties' incomes. *Matter of Woods,* 561 F.2d 27 (7th Cir.1977); and

3. Whether the support award would be inadequate absent the debt assumption. *Nitz v. Nitz,* 568 F.2d 148 (10th Cir.1977).

Here the Court finds that extrinsic evidence should be considered because the Browns' intent cannot be gleaned from the divorce decree alone. Applying the three tests discussed above, the Court can conclude that the Browns intended that Mr. Brown's assumption of the debt to Associates be part and parcel of the child support award. After all, the debt was incurred to refinance the loan on their house. Nothing could be more "necessary" than a shelter for their four children. Furthermore, Mr. Brown's take home pay was significantly greater than Mrs. Brown's, yet she had the burden of maintaining a home for them and feeding and clothing them. Finally, there is the uncontroverted testimony of Mrs. Brown that absent Mr. Brown's assumption of the debt to Associates, she would not have agreed to $140.00 a month in child support. The Court can take judicial notice that $140.00 a month will not feed four children aged 8 through 17, let alone house

them. Mrs. Brown's take home pay of $450.00 a month, coupled with the $140.00 would still be inadequate.

The Court therefore finds that Mr. Brown's assumption of the debt to Associates was in the nature of alimony, maintenance or support, and thus is not dischargeable.

THIS MEMORANDUM SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52 OF THE FEDERAL RULES OF CIVIL PROCEDURE.