In re Lewis BOYD-LEOPARD, f/k/a Lewis Albert Leopard, Debtor.

Lewis BOYD-LEOPARD, f/k/a Lewis Albert Leopard, Plaintiff,

v.

Lara DOUGLASS, a/k/a Lara M. Leopard, Defendant.

Bankruptcy No. 82–01724.
No. C–# 83–0044.

United States Bankruptcy Court, D. South Carolina.

May 14, 1984.

Reid B. Smith, Columbia, S.C., for plaintiff.

Kenneth M. Mathews, Columbia, S.C., for defendant.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

Plaintiff instituted this action against his former wife (the defendant) seeking a determination as to the dischargeability of certain obligations of the plaintiff imposed by a separation agreement and consent order entered into by the parties.

## FACTS

The following facts have been established from the testimony, and from a proposed joint pre-trial order submitted by the parties:

1. The plaintiff filed a petition for relief under Chapter 7 of the United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*) on October 14, 1982.

2. The plaintiff and the defendant were divorced on December 7, 1979. As part of their divorce proceedings, the plaintiff and the defendant, on September 5, 1979, entered into a property settlement agreement wherein the debtor agreed to make payments on a second mortgage, held by the United Bank of Virginia, encumbering real estate located at 3220 Murray Street, Columbia, South Carolina. On this mortgage, approximately $8,497.35 was due.

3. The property settlement agreement was entered as an exhibit at the hearing.

4. The real estate, located at 3220 Murray Street, Columbia, is the former marital abode of the parties.

5. As part of their property settlement, the plaintiff deeded to the defendant all his right, title and interest to the residence.

6. The property settlement agreement required the plaintiff to pay child support payments to the defendant and to be responsible for medical bills incurred by the parties' son. The plaintiff agrees that the child support obligations and medical obligations, as set forth in the separation agreement, and consent order, are nondischargeable.

7. The property settlement agreement required the plaintiff to assume full responsibility for joint debts which were incurred by the parties during the course of their marriage.

8. In December, 1981, the defendant sold the residence at 3220 Murray Street for approximately $55,000, and used the proceeds to satisfy the second mortgage held by the United Bank of Virginia.

9. After taking into consideration the assumption of the first mortgage by the purchaser, the defendant realized approximately $33,000 from the sale. From this sum, $8,497.35 was used to satisfy the second mortgage, and $8,000 was used to reimburse the defendant's father for repairs which he had made to the residence.

10. In May of 1982, the defendant remarried and now resides at 602 South Edisto Street, Columbia, South Carolina, in a residence owned by her father.

11. The defendant is a graduate student, expecting to graduate in December, 1983.

12. One child, a son, was born to the parties during their marriage; his 18th birthday will be August 16, 1992.

13. In a consent order issued by the Family Court dated May 4, 1982, the plaintiff was ordered to pay to the defendant the sum of $250.00 per month toward the support and maintenance of their son.

14. The consent order also required the plaintiff to reimburse the defendant for funds which she had advanced to satisfy the mortgage held by the United Bank of Virginia on their marital residence. In compliance with the order requiring the plaintiff to execute a note to reimburse the defendant, the plaintiff executed a promissory note on April 6, 1982, in the amount of $8,497.35, payable in monthly installments of $105.00 on the 15th day of each month, commencing May 15, 1982. The note contains a provision that any and all remaining principal and interest, charges and costs due under this note shall be due and payable in full on August 15, 1992.

## DISCUSSION

11 U.S.C. § 523(a)(5) states that:

A debtor may not be discharged from any debt to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement, but not to the extent that—

... (B) such debt includes a liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance or support.

In considering the intent of Congress in enacting this section of the Bankruptcy Code of 1978, the legislative history is entitled to great weight. *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 10 (2d Cir.1981), *Cribb v. Cribb (In re Cribb)*, 34 B.R. 862 (Bkrtcy. D.S.C.1983). The Senate and House Reports both stated that "This language [of § 523(a)(5)] ... will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent. What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 77–79 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5865, 6320. The Reports further stated that "This provision will, however,

make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement." *Id.*

■ Thus, the bankruptcy court may look beyond the four corners of a divorce decree or an agreement of the parties in order to determine the nature of the payments constituting the debts sought to be discharged. The characterization placed on the award by a state court in the decree is not determinative. The function or purpose which the award was intended to serve or support is the crucial issue. *Williams v. Williams (In re Williams)*, 703 F.2d 1055 (8th Cir.1983); *Spong, supra* at 9; *Cribb, supra* at 864; *Jensen v. Jensen (In re Jensen)*, 17 B.R. 537 (Bkrtcy. W.D. Mo.1982); *Carrigg v. Carrigg (In re Carrigg)*, 8 B.C.D. 330, 14 B.R. 658, 5 C.B.C.2d 446 (Bkrtcy. D.S.C.1981).

■ There is a two-prong test which a debt arising from a state court order for the payment of alimony, support, or maintenance must meet before the debt will be declared nondischargeable by the bankruptcy court. First, the obligation must be payable to a spouse, former spouse, or child; second, the obligation must be in the nature of alimony, maintenance, or support. *Davis v. Summer (In re Summer)*, 20 B.R. 24 (Bkrtcy. D.S.C.1982), citing *Carrigg, supra* at 661; *Cribb, supra* at 864.

■ The party challenging the dischargeability of a debt bears the burden of proof. *Cribb, supra*, at 865; *Sylvester v. Stone (In re Stone)*, 11 B.R. 209, 211 (Bkrtcy. D.S.C.1981). *See also, Green v. Green (In re Green)*, 5 B.R. 247, 2 C.B. C.2d 905 (Bkrtcy. N.D.Fla.1980). Thus, the defendant has the burden of proving that the debts are in the nature of alimony, maintenance, or support, and, as such, nondischargeable. *Cribb, supra*, at 865.

## I.

### Joint Marital Obligations

In paragraph 15 of his complaint, the plaintiff set forth 17 obligations which arose during the course of the parties' marriage. At the hearing held on July 26, the debtor/plaintiff testified that none of the obligations set forth in paragraph 15 are in the nature of support, that most of the debts are based upon charges made on revolving charge accounts, debt consolidation loans, or credit card charges. The defendant presented no evidence or testimony to rebut plaintiff's testimony.

▆▆▆▆ Applying the twofold test of *Carrigg* to these debts, the fact that these debts are not payable *directly* to the defendant is not determinative of the dischargeability of the debts.[1] *Cribb, supra* at 865; *see, Wolfe v. Wolfe (In re Wolfe),* 26 B.R. 781, 785 (Bkrtcy. D.Kan.1982). In this case, the joint marital debts assumed by the plaintiff meet the first part of the *Carrigg* test.

▆▆▆▆ As to the second part of the *Carrigg* test, the plaintiff testified that none of the obligations set forth in paragraph 15 of the complaint represent property or services necessary for the support of a spouse or children. If after considering the substance of the underlying debts, a court finds that the debts do not represent property or services necessary for the maintenance of support of a spouse or children, then an agreement to assume joint debts which arose during the course of a marriage will be discharged. *Miller v. Bankers Guarantee Title and Trust Co. (In re Miller),* 8 B.R. 174, 3 C.B.C.2d 595 (Bkrtcy. N.D.Ohio 1981); *Stranathan, supra,* and *Stevens v. French (In re French),* 19 B.R. 255, 6 C.B.C.2d 636 (Bkrtcy. S.D.Cal.1981).

▆▆▆▆ Because the defendant has not met her burden of proving that the joint marital debts assumed by the plaintiff in the separation agreement represent property or services necessary for the support of a spouse or children, the joint obligations set forth in paragraph 15 of the plaintiff's complaint do not meet the second prong of the *Carrigg* test and are, therefore, dischargeable. *See, Cribb, supra* at 865.

## II.

### Second Mortgage Payments

Although the issue of dischargeability as to the debtor's obligation to reimburse the defendant for her satisfying the second mortgage from proceeds of the sale of the residence is not as easily decided, the plaintiff contends that the facts, as they have been established, and the separation agreement and later consent order clearly define whether this obligation is a division of property or whether it is in the nature of support.

The defendant contends that the obligation to reimburse is not dischargeable because providing their son with a place in which to live is a form of support, as evidenced by the fact the obligation to make these payments expires one day prior to their son's eighteenth birthday. Neither reason supports a finding of nondischargeability.

▆▆▆▆ Under the terms of the consent order executed by both parties, the debtor agreed to pay the defendant the sum of $105.00 per month until August 15, 1992, at which time the remaining balance of the principal would be due. The payment was based on the amount necessary to satisfy the second mortgage. There is no provision in the consent order terminating these payments in the event of the death or remarriage of the defendant. An obligation which does not terminate on the death or

---

1. At this time, the court takes the opportunity to dispel any uncertainties which might arise from seemingly inconsistent language in the *Cribb* case; the mere fact that a debt is to be paid to a party other than the debtor's spouse does not automatically render the debt dischargeable. The debt need not be payable *directly* to the spouse or dependent to be nondischargeable, it need only be payable on behalf of the spouse or dependent to satisfy the first part of the *Carrigg* test. *See, Long v. Calhoun (In re Calhoun),* 715 F.2d 1103, 1107 (6th Cir.1983); *Stranathan v. Stowell (In re Stranathan),* 8 B.C.D. 472, 15 B.R. 223, 5 C.B.C.2d 640 (Bkrtcy. M.D.Fla.1982).

remarriage of the recipient spouse is more indicative of a property settlement than alimony or support. *Carrigg.*

■ In South Carolina alimony terminates upon the remarriage of the recipient spouse. *Darden v. Witham,* 258 S.C. 380, 188 S.E.2d 776 (1972).

■ In *Carrigg,* this court found that a debtor's obligation to make payments to his ex wife in lieu of her giving up the marital abode constituted a form of support and was nondischargeable. Other bankruptcy cases have held that an obligation to make mortgage payments on a residence in which the former spouse currently resides to be nondischargeable. See *Mullins v. Mullins (In re Mullins),* 7 B.C.D. 632, 14 B.R. 771, 5 C.B.C.2d 368 (Bkrtcy. W.D.Ok. 1981). The courts in both *Carrigg* and *Mullins* recognized an obligation to provide a residence as a means of support.

However, the facts here are distinguishable from those in *Mullins* and *Carrigg.* In *Mullins* the ex spouse continued to reside in the residence. Here, the debtor's ex spouse has sold the residence, receiving more than $20,000 in equity, and she now resides in a house owned by her father. In *Carrigg,* the ex wife gave up her rights to the marital abode—the payments required to be made by the debtor were designed to help provide the ex wife with a place in which to live.

The payments which this debtor agreed to make on the second mortgage pursuant to the terms of the separation agreement are no longer needed by the defendant as a means of providing her with a place in which to reside. Thus it appears that these payments are not necessary for the maintenance or support of the ex spouse, but are in fact a division of property. See, *Wilburn v. Wilburn (In re Wilburn),* 33 B.R. 618 (Bkrtcy. N.D.Ohio 1983) (Debtor's obligation to compensate his former wife for monies expended in sale of the marital residence was a property settlement and was dischargeable.).

The fact that these payments do not terminate upon the remarriage or death of the defendant should be considered in determining whether the obligation is support, maintenance or alimony for the defendant. *Hixson v. Hixson (In re Hixson),* 23 B.R. 492 (Bkrtcy. S.D.Ohio 1982); *Carrigg, supra.* In this case, this factor is especially relevant because the defendant has remarried.

The defendant makes much of the fact that the debtor's obligation to make these payments expires one day prior to the 18th birthday of their son. Although this is a fact to be considered by the court, it alone should not control.

The separation agreement and the consent order indicate that the intent of the parties, regarding the obligation of the debtor to make the mortgage payments, was to treat the payments as a division of property—not support. The obligation of the debtor to make payments on the second mortgage encumbering the parties' former marital abode was set forth explicitly in separate portions of the consent order and the property settlement agreement. In the property settlement agreement and in the consent order, arrangements were made for child support including the defendant's paying medical expenses of the child. The child support obligations and medical expenses payments are not at issue.

In considering the fact that both the separation agreement and consent order provide for treatment of the debtor's obligation to make the mortgage payments apart from the child support payments, this court is of the opinion that the defendant's obligation to make payments to reimburse the defendant for satisfaction of the second mortgage on the former residence is not a form of child support, but results from a property settlement. *See, Wilburn, supra.* A factor tending to support the dischargeability of this debt is that the child support was dealt with in other portions of both the consent order and separation agreement. *See, Polen v. Polen (In re Polen),* 30 B.R. 572 (Bkrtcy. D.S.C.1983).

Before this court finds an obligation to be nondischargeable, it "... must first determine whether a duty of support exists

between the parties under applicable state law. The court must then apply federal law to characterize the debts arising from this relationship for determining the effect of bankruptcy upon those debts." *Warner v. Warner (In re Warner)*, 6 B.C.D. 788, 791, 5 B.R. 434, 439 (Bkrtcy. D.Utah 1980). Applying this test to the facts of the case, it is clear that no duty of alimony exists because of the defendant's remarriage. If any duty of support exists, it would be the duty to provide child support.

Because the duties of the debtor to pay $250.00 child support each month, and to reimburse the defendant for the medical expenses of their son, and to maintain life insurance policies with the child named as beneficiary are set out in the Separation Agreement and Consent Order clearly and separately from the debtor's obligation to make payments on the second mortgage, the payments to reimburse the defendant for funds which she used from the proceeds of the sale of the residence to satisfy the second mortgage cannot be construed as child support.

For the reasons stated above, this court finds that the defendant has not met her burden of showing that the mortgage obligation is nondischargeable therefore, it is dischargeable.

## CONCLUSION

The court concludes that:

1. The joint obligations listed in paragraph 15 of the complaint are dischargeable;

2. the mortgage debt as set in a note for the amount of $8,492.35 is dischargeable; and

3. the child support obligations, insurance obligations, and medical obligations as set forth in the separation agreement and consent order are nondischargeable.

## ORDER

AND IT IS SO ORDERED.