**In re Robert Edgar BURNS, Debtor.**

**Gail M. BURNS, Plaintiff,**

v.

**Robert Edgar BURNS, Defendant.**

**Bankruptcy No. 91–04465.**
**Adv. No. 91–8307.**

United States Bankruptcy Court,
D. South Carolina.

June 15, 1992.

court that obligations of the defendant, Robert Edgar Burns, to her created in a Settlement Agreement incorporated in the parties' Decree of Divorce are nondischargeable.

In the plaintiff's first cause of action she alleges that the defendant's obligation to pay (1) a second mortgage on her residence; (2) all of the parties' joint credit card debts and their joint liability on two parcels of real estate; and (3) a portion of the attorney's fees incurred by her during the divorce proceedings,[1] constitute maintenance and support and are, therefore, nondischargeable under 11 U.S.C. § 523(a)(5).[2] In her second cause of action, the plaintiff alleges that the defendant's failure to pay the second mortgage on her residence constitutes willful and malicious injury by the defendant to the plaintiff thus rendering that obligation nondischargeable under § 523(a)(6).

It is the conclusion of the court that the obligations of the defendant to the plaintiff, set forth in the Settlement Agreement, are in the nature of maintenance and support, therefore, nondischargeable pursuant to § 523(a)(5)(B).

### BURDEN OF PROOF

■ The plaintiff in this adversary proceeding has the burden of proof as to the nondischargeability of the debt. *See Tilley v. Jessee,* 789 F.2d 1074, 1077 (4th Cir.1986). This burden of proof must be satisfied by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991);[3] *Combs v. Richardson,* 838 F.2d 112, 18 C.B.C.2d 487 (4th Cir. 1988).

William L. Harritt, Jr., Sumter, SC, for plaintiff Gail M. Burns.

John R. Lester, Columbia, SC, for defendant Robert Edgar Burns.

### ORDER

J. BRATTON DAVIS, Chief Judge.

In this adversary proceeding the plaintiff, Gail M. Burns, seeks a determination by this

### FACTS

1. The parties were married on June 5, 1975 and they have one minor child.

---

1. The plaintiff initially also asked for a declaration that the defendant's child support obligation be declared nondischargeable; however, prior to trial the parties stipulated that the child support payments were nondischargeable. Therefore, that issue is no longer before the court.

2. Further references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* shall be by section number only.

3. See, also, *In re Spector,* 133 B.R. 733, 22 B.C.D. 502 (Bankr.E.D.Pa.1991): "in assessing the standard of proof necessary to establish the nondischargeability of a debt under, apparently, any provision of § 523(a) of the Bankruptcy Code, the Supreme Court has recently held, in *Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991), that the appropriate level of proof is the 'preponderance of the evidence' standard."

2. The parties were divorced by Decree of Divorce of the Family Court for the First Judicial Circuit, Calhoun County, South Carolina on July 17, 1991.

3. As part of the proceeding which gave rise to the Decree of Divorce, the parties entered into a Settlement Agreement addressing various issues pertinent to their divorce. That Settlement Agreement was incorporated into the July 17, 1991 Decree of Divorce as well as into an earlier Family Court order of October 1, 1990. The Settlement Agreement created the obligations which the plaintiff alleges are nondischargeable.

4. The relevant portions of the Settlement Agreement provide:

a. Mr. Burns shall receive the former marital home located at P.O. Box 25B, Route 2, St. Matthews, South Carolina 29135 and he agrees to assume the mortgage payment and all other financial obligations relating to the former marital home.

b. Mrs. Burns is to receive the Specialty House, Inc. and the property located in downtown St. Matthews, at 120 E. Bridge Street, St. Matthews, South Carolina. Mrs. Burns is to assume all financial obligations related to the Specialty House, Inc., and the downtown St. Matthews property except the second mortgage.

c. The second mortgage on the Specialty House, Inc., which is approximately $23,-865.92, shall be assumed by Mr. Burns. Mr. Burns shall have the second mortgage either transferred to the former marital home or to some other substitute security. Mr. Burns further agrees to hold Mrs. Burns harmless from any payments on the second mortgage on the Specialty House, Inc. and the surrounding St. Matthews property located at 120 E. Bridge Street, St. Matthews, South Carolina.

d. Mr. Burns agrees to transfer the mortgage within thirty (30) days, if possible. If he is unable to have the mortgage transferred in thirty (30) days the parties agree to, in good faith, negotiate a reasonable extension.

\* \* \* \* \* \*

f. Both parties agree to waive any and all rights they may have to alimony past, present or future.

\* \* \* \* \* \*

s. The parties agree that all personal property shall be divided 50–50, excluding the personal property of the minor child. First, the parties shall try to agree between themselves as to the division of the personal property, excluding the child's property. Secondly, if the parties are unable to reach an agreement or their is some item or items that they cannot reach an agreement they will submit those to their respective attorneys and the attorneys will attempt to reach an agreement. If neither one of the above methods work then the parties shall, at the time the child support, attorney's fees and costs are litigated, submit the remaining issues of the division of personal property to the Court.

\* \* \* \* \* \*

w. Credit cards—Mr. Burns shall assume the responsibility of the following credit cards and debt:

Sears credit card with miscellaneous expenses.

Citgo Master card

S.C. National Visa

Chevy Chase Master card

Sears Security System card

Dick Banks property (2 lots, 4 acres) associated with the marital residence

\* \* \* \* \* \*

x. Except as spelled out above each party shall be responsible for their own obligations and debts.

\* \* \* \* \* \*

z. Both parties shall be responsible for mortgage payments, taxes, insurance and other expenses related to the real property that they are receiving pursuant to the terms of this agreement.

\* \* \* \* \* \*

bb. The parties hereto acknowledge that they have made a full representation of their financial circumstances and that there are no liens or encumbrances, judg-

ments or any other financial liability to infringe upon the property divided by the terms of this agreement that have not been identified for the record.

\* \* \* \* \* \*

8. Each party agrees to immediately sign the necessary documents to effectuate the transfers under the terms of this Agreement.

5. The defendant, having failed to satisfy the credit card debt and the Dick Banks debt as agreed, was held in contempt of court by the Family Court of the First Judicial Circuit, and was sentenced to sixty (60) days to be served in either the Orangeburg County or Calhoun County Correctional Center with the provision that the sentence would be suspended upon the defendant's immediate payment of the arrearage on the said debts and his continuing to make the payments until the debts were paid in full.

6. The defendant failed to pay the second mortgage or to transfer it as previously ordered. As a result, he was ordered by the Family Court to comply with the Settlement Agreement by satisfying the second mortgage on the plaintiff's residence in the amount of $23,865.92, or have the mortgage transferred to other property by July 5, 1991. The Family Court further ordered that in the event the second mortgage was not satisfied, the marital home would be sold immediately and the proceeds be applied to satisfy the second mortgage—the defendant being responsible for any deficiency.

7. The defendant sold the marital residence on June 24, 1991 for $97,000 out of which he received a net profit of $13,070.42.

8. In July, 1991, the Family Court found the defendant to be in contempt for failing to pay the joint debts and second mortgage as previously ordered.

9. Subsequent to that order, the Family Court, finding the defendant to be in willful contempt of court for his failure to comply with the court's orders to pay the second mortgage, sentenced the defendant to six (6) months in the Orangeburg County Correctional Center, with the sentence suspended upon the defendant's paying $8,000 on the principal of the second mortgage on or be-

fore August 30, 1991 and his continuing to make payments on the second mortgage. That court also ordered the defendant to pay $5000 to the plaintiff for her attorney's fees.

10. The defendant never made the payments mentioned in the preceding paragraph.

11. The defendant filed his petition for relief under Chapter 7 of the United States Bankruptcy Code on July 29, 1991.

## DISCUSSION
### I

*Dischargeability Under § 523(a)(5)*

Under § 523(a)(5) a debt is not dischargeable if it is a debt:

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property agreement, but to the extent that—
>
> \* \* \* \* \* \*
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

To be nondischargeable under § 523(a)(5)(B) an obligation, must satisfy this two-prong test: first, the obligation must be payable on behalf of a spouse, former spouse or child; and, second, the obligation must be in the nature of alimony, maintenance or support. *Cribb v. Cribb (In re Cribb)*, 34 B.R. 862 (Bankr.D.S.C.1983).

When determining the nondischargeability *vel non* of obligations such as these, "a bankruptcy court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation". *In re Goin*, 808 F.2d 1391 (10th Cir.1987); *Carrigg v. Carrigg (In re Carrigg)*, 14 B.R. 658 (Bankr.D.S.C.1981). The determination as to dischargeability must be made according to federal law, not state law. *Long v. West (In re Long)*, 794 F.2d 928 (4th Cir.1986). "The legislative history of § 523(a)(5) demonstrates that Congress determined that state support laws should not

be determinative of whether a particular obligation is dischargeable." *In re Biggs,* 907 F.2d 503 (5th Cir.1990).

With these precepts in mind, the court will consider each of the three obligations which the plaintiff alleges are nondischargeable.

### A

### *Joint Debts*

■ The obligation designated by the parties as joint debts include the credit card amounts enumerated in paragraph 6(w) of the Settlement Agreement, along with an obligation known to the parties simply as the Dick Banks' debt.

■ The defendant argues that, because these obligations are not payable directly to the plaintiff, the first part of the *Carrigg* test cannot be satisfied. However, in *Cribb,* supra, this court, disposing of a similar argument, noted:

> The fact that the debtor will, in all probability, pay the bank directly, rather than through his former wife, has no material bearing on the nondischargeability of the debt. Divorce decrees often provide for debt assumption in lieu of, or as part of, alimony, support, or maintenance. It is frequently inconvenient or impractical to require the debt to be paid through the spouse rather than directly to the creditor.

34 B.R. 862, 865 (citations omitted).

Hence, the fact that the joint obligations are not paid directly to the spouse does not automatically render the obligations dischargeable. Here the first part of the *Carrigg* test is satisfied since the obligations were to be paid, according to the parties' Settlement Agreement, on behalf of the plaintiff.

The second element of the *Carrigg* test, likewise, is met. The obligations represent property or services necessary for the support and maintenance of the plaintiff and the parties' dependant daughter. The debts are for household obligations and routine living expenses, which, if not assumed by the debtor, would result in a severe diminution in the plaintiff's and their child's standard of living. The plaintiff, it appears, would not have relinquished her right to alimony and support without the defendant's assumption of these joint debts.

### B

### *The Second Mortgage on The Bridge Street Residence*

■ As to the second mortgage, the court looks to its holding in *In re Cribb,* 34 B.R. 862 (Bankr.D.S.C.1983) wherein, this court held that the debtor's obligation, created in a consent order of a family court during the debtor's divorce proceedings, to assume payment of a second mortgage on his ex-wife's residence, was in the nature of maintenance and support.

> The purpose of the debtor's assumption of the second mortgage debt was to maintain and support the former spouse and child in the family home. The obligation to maintain and support a family includes the obligation to keep a roof over their heads. This is what the debtor understood when he agreed to assume the second mortgage on the home in which his former spouse and his child were to live.

> Clearly, the debt assumption on the second mortgage meets both prongs of the test and is, therefore, not a dischargeable debt under 11 U.S.C. § 523(a)(5)(B).

34 B.R. 862, at 865 (citations omitted).

This court, noting that the facts in the instant case are substantively indistinguishable from the facts in *Cribb,* concludes that the debtor's obligations to hold the plaintiff harmless and to pay the second mortgage on the Bridge Street property are nondischargeable under § 523(a)(5)(B).

Although, on this issue, the debtor relies on *In re Boyd–Leopard* 40 B.R. 651 (Bankr. D.S.C.1984), the facts here are distinguishable from those in *Boyd–Leopard* because in *Boyd–Leopard* the ex-spouse, unlike the plaintiff, sold the residence subject to the second mortgage and was residing in a home owned by her father. There, the ex-spouse no longer relied on the payment of the second mortgage as an element of support. That renders *Boyd–Leopard* inapposite to this adversary proceeding.

## C
### Attorney's Fees

■ Plaintiff alleges that the Family Court award to her of $5,000 in attorney's fees constitutes maintenance and support and is, therefore, a nondischargeable obligation of the debtor. Attorney's fees awarded to a spouse or former spouse or agreed to be paid to a spouse or former spouse in a separation agreement are nondischargeable when they are in the nature of alimony, maintenance or support. *Cooley v. Sposa (In re Sposa)*, 31 B.R. 307 (Bankr.E.D.Va.1983). *See Pauley v. Spong*, 661 F.2d 6 (2nd Cir.1981); *Brodsky, Greenblatt, & Renehan, Chartered v. Daumit (In re Daumit)*, 25 B.R. 371 (Bankr. D.Md.1982); *Brown v. Brown (In re Brown)*, Case No. 81–00585, Complaint No. 81–0268 (Bankr.D.S.C. 8/31/82); *Westmoreland, Patterson, and Moseley v. Painter (In re Painter)*, 21 B.R. 846 (Bankr.M.D.Ga.1982).

■ To satisfy the first part of the *Carrigg* test, the attorney's fees need not be payable *directly* to the debtor's former spouse so long as the payment is on behalf of the former spouse. *See, Cooley v. Sposa (In re Sposa)*, 31 B.R. 307, 310 (Bankr.E.D.Va. 1983); *Knight v. Knight (In re Knight)*, 29 B.R. 748 (Bankr.W.D.N.C.1983); *Glover v. Glover (In re Glover)*, 16 B.R. 213, 215 (Bankr.M.D.Fla.1981); *French v. Prante (In re French)*, 9 B.R. 464, 4 C.B.C.2d 263 (Bankr.S.D.Cal.1981). The $5,000 award of attorney's fees in this case satisfies the first part of the *Carrigg* test.

As to the second part of the *Carrigg* test, that is, whether the obligation is actually in the nature of alimony, maintenance, or support, the courts have held that the dischargeability of ancillary obligations such as attorney's fees is determined by the dischargeability of the primary debt. *Sposa*, 31 B.R. at 310; *LaFleur v. LaFleur (In re LaFleur)*, 11 B.R. 26, 29 (Bankr.D.Mass.1981); *Bell, supra.*

Because the primary debt here is in the nature of maintenance and support, the $5,000 award of attorney's fees is in the nature of maintenance and support, therefore, nondischargeable.

## II
### Dischargeability Under § 523(a)(6)

■ The plaintiff alleges in her second cause of action that the obligation to assume the second mortgage is nondischargeable under § 523(a)(6), which provides:

(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\*　　\*　　\*　　\*　　\*　　\*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

■ In order for the plaintiff to have the defendant's obligation to assume debts declared nondischargeable under § 523(a)(6), she must prove by a preponderance of the evidence an act of the defendant which injured her or her property; that the act was willful; and that the act was malicious. Even though "there is no need to show specific malice under Section 523(a)(6) of the Code on the part of the debtor ... implied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient ...," *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir.1985).

The plaintiff has failed to sustain that burden.

### ORDER

Accordingly, IT IS ORDERED, ADJUDGED AND DECREED that the obligations of the defendant to the plaintiff to pay: the credit card debts, the Dick Banks debt, the second mortgage on the Bridge Street residence, and the plaintiff $5,000 for attorney's fees, are obligations in the nature of alimony, maintenance and support, therefore, nondischargeable under § 523(a)(5)(B).